CROOK *v.* ECKHARDT.

1. AUTOMOBILES — NEGLIGENCE — IMPUTED TO GUEST PASSENGERS — PASSENGERS FOR HIRE.

Negligence of the driver of a motor vehicle is imputed to a guest passenger but not to a passenger for hire.

2. WORDS AND PHRASES—GUEST.

The word "guest" connotes both a social relationship and the existence of a host.

3. AUTOMOBILES—GUEST PASSENGERS—QUESTION OF FACT—4-H CLUB INSTRUCTOR—TRANSPORTATION AS CONSIDERATION.

Question as to whether or not instructor in a camp belonging to a 4-H Club, a voluntary, unincorporated organization sponsored by the Federal, State and county governments, who was engaged to act as a voluntary helper and furnished with accommodations and board during stay in camp, was a guest passen-

ger of woman responsible for the club work who was paid a salary and an allowance for use of her car *held*, question of fact for jury where testimony as to whether passenger was to be furnished transportation as part of consideration or as a personal accommodation presented a conflict (1 Comp. Laws 1929, § 4648).

4. DEATH—AUTOMOBILES—INSTANTANEOUSNESS A QUESTION OF FACT —EVIDENCE.

Whether or not passenger in one defendant's car was instantly killed when car collided with other defendant's truck *held*, question of fact under evidence in action brought under death act (3 Comp. Laws 1929, §§ 14061, 14062).

5. HUSBAND AND WIFE—DEATH ACT—SURVIVAL ACT—RECOVERY BY SURVIVING SPOUSE—COMMON LAW.

Neither the death act nor the survival act contains language expressly providing for recovery by a surviving spouse where death has occurred because of a wrongful act, hence recovery, if any, must be had under the common law (3 Comp. Laws 1929, §§ 14040, 14061, 14062).

6. DEATH—ACTION BY HUSBAND FOR INSTANTANEOUS DEATH OF WIFE.

An action may be maintained by a husband under the death act, as administrator of his wife's estate, and recovery had for loss of her services where the death of the wife was instantaneous (3 Comp. Laws 1929, §§ 14061, 14062).

7. SAME—DAMAGES—DEATH OF WIFE—EVIDENCE.

In action under death act by husband, as administrator, evidence by plaintiff, by way of testimony as to value of deceased wife's services and cost of maintenance, although competent and admissible, *held*, not necessary to his recovery for loss of services where the surroundings of the parties are shown and jury is left to fix damages from their personal experience (3 Comp. Laws 1929, §§ 14061, 14062).

8. SAME — DAMAGES — INSTANTANEOUS DEATH OF WIFE — LOSS OF SERVICES.

Verdict of $6,558.90 in action under death act, covering funeral expenses of $444 and loss by a husband of services of his wife, a healthy 30-year old woman with life expectancy of 35.33 years, *held*, not excessive (3 Comp. Laws 1929, §§ 14061, 14062).

9. APPEAL AND ERROR—SIZE OF VERDICTS—LOSS OF WIFE'S SERVICES.
Supreme Court will not substitute its judgment on size of verdict for husband's loss of wife's services in action under death act unless the verdict has been secured by improper methods, prejudice or sympathy (3 Comp. Laws 1929, §§ 14061, 14062).

10. SAME—INSTRUCTIONS—INSTANTANEOUS DEATH.
Charge to jury in action under death act that "where there is a continuing injury, resulting in death within a few moments, it is instantaneous within the meaning of the statute" followed by "the recognized test in this State distinguishing between the two causes of action, survival and instantaneous death, is whether the active cause of death continued to operate directly upon the injured person until life was extinct, and it follows, from this definition, that if the deceased survived any appreciable length of time, even though in an unconscious condition" plaintiff could not recover *held*, proper (3 Comp. Laws 1929, §§ 14061, 14062).

11. AUTOMOBILES—NEGLIGENCE—QUESTION FOR JURY—EVIDENCE.
In action under death act by husband as administrator of estate of his wife who was killed while a passenger in one defendant's car when it collided with other defendant's truck, question of the negligence of defendants *held*, one of fact and verdict for plaintiff not contrary to great and overwhelming weight of the evidence (3 Comp. Laws 1929, §§ 14061, 14062).

12. SAME—JOINT TORTFEASORS—IMPUTED NEGLIGENCE—PASSENGER FOR HIRE.
In action under death act by husband as administrator of estate of his wife who was killed while a passenger in one defendant's car when it collided with other defendant's truck, elimination of question of imputed negligence *held*, not prejudicial to defendant truck owner where jury found, in answer to special question, that plaintiff's decedent was a passenger for hire of other defendant (3 Comp. Laws 1929, §§ 14061, 14062).

13. SAME—SPEED—INSTRUCTIONS.
In action under death act against owners of two motor vehicles which collided at intersection of two county roads where view was partially obstructed near the corner, question of speed of the two vehicles as they approached intersection *held*, adequately covered by charge to the jury (3 Comp. Laws 1929, §§ 14061, 14062).

Appeal from Wayne; Webster (Arthur), J. Submitted June 9, 1937. (Docket No. 41, Calendar No. 39,473.) Decided November 10, 1937.

Case by Francis Crook, administrator of the estate of Viola Crook, deceased, against Margaret Eckhardt and Grand Rapids Bedding Company, a Michigan corporation, for personal injuries sustained in a motor vehicle collision causing death of plaintiff's decedent. Special verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*Dohany & Dohany (George A. Porter, of counsel), for plaintiff.*

*Kerr, Lacey & Scroggie, for defendant Eckhardt.*

*Rodgers & Dunn, for defendant Grand Rapids Bedding Co.*

BUSHNELL, J. Plaintiff's wife, Viola Crook, came to her death while riding in a Buick coupe driven by defendant, Margaret Eckhardt, which collided with defendant Grand Rapids Bedding Company's three-ton G.M.C. truck at the intersection of Holly and Baldwin Roads in Genesee county about 11:30 a.m. June 24, 1932. These 20-foot gravel roads cross each other at right angles, neither being a through highway. The truck driver did not see the coupe until he reached the intersection, but Miss Eckhardt saw the truck when it was 500 or 600 feet away from the corner; a hill near the southwest corner obstructed the view of both drivers within 50 feet of the intersection.

Margaret Eckhardt, a supervisor of a 4-H Club camp located near Flint, was on her way to Detroit,

traveling easterly on Baldwin road. Three children, who had been at the camp, were riding in the front seat with Miss Eckhardt; Mrs. Crook and two other women were occupying the rumble seat. The truck, which was going northerly on the easterly side of Holly road, hit the right rear wheel of the Buick coupe after it had passed the center of the intersection and turned it upside down.

After the collision, Mrs. Crook was found lying in a field about 40 or 50 feet from the road. A deputy sheriff, who arrived at the scene shortly after the accident, found the Buick car about 20 or 25 feet east of Holly road on the north side of Baldwin road facing the west and the truck on Holly road about 100 feet beyond Baldwin road, facing north.

The 4-H Club is an unincorporated, voluntary organization which promotes activities for boys and girls and sponsors better methods of agriculture and home economics for those in the rural sections; the 4-H refers to the head, hand, heart and health. The work of these clubs is financed jointly by the Federal, State and county governments and is controlled by the United States department of agriculture. Defendant Eckhardt, employed through Michigan State College, was responsible for 4-H Club work in Wayne county, receiving a salary for this service and an allowance for the use of her car. Mrs. Crook, a school teacher and housewife, had been one of the instructors at a 4-H camp conducted under the supervision of Miss Eckhardt at a Y. M. C. A. camp at Lake Kopankomack near Flint; she was described by witness Eckhardt as a voluntary helper. A charge of $6 was made for each child during a five days' stay at the camp. The cabin leaders or volunteer helpers were not paid any salaries, but were furnished with accommodations and board during

their stay at the camp. Mrs. Crook had been driven to the camp some days previously by her husband and Miss Eckhardt testified:

"Her husband called and said that he could not come after her. * * * I merely drove her back to Wayne county as an accommodation."

Mr. Crook said that he was present when Miss Eckhardt engaged his wife to go to the camp as a leader. He testified:

"Miss Eckhardt came to our home and she said to my wife that she would like to have her go up to camp again this year as an instructor for the 4–H boys and girls, and if she would go she would furnish her with board and room and transportation up and back, and my wife said under those conditions that she would go."

He said he took his wife to camp on Sunday but she "always came home on a week day and I was not supposed to go and get her."

Plaintiff, as administrator of the estate of Viola Crook, deceased, brought suit under the so-called death act (3 Comp. Laws 1929, §§ 14061, 14062) and did not include a survival count in his declaration. He averred that his decedent was at the time of her death in the employ of the 4–H Club whose "superintendent" and "alter ego," Margaret Eckhardt, "was engaged in transporting Viola Crook * * * in keeping with the contract of hire theretofore entered into between the 4–H Club through said Margaret Eckhardt and plaintiff's intestate." Damages were claimed by plaintiff, in his declaration, for funeral expenses, "services, fellowship, companionship, society, assistance and everything incident to the marriage relation."

Defendant Grand Rapids Bedding Company filed an answer amounting to a general denial of plain-

tiff's declaration. Defendant Eckhardt added, to her general denial, the averment that the accident was caused by the negligence of the Grand Rapids Bedding Company, and that Viola Crook "was a guest of this defendant who is not guilty of any gross negligence or wilful and wanton misconduct, nor of any negligence whatsoever."

Motions for a directed verdict in favor of defendants were denied and the matter was submitted to the jury who rendered a verdict for plaintiff in the sum of $6,558.90. The jury answered three special questions submitted to them by the court as follows:

"Was the deceased, Viola Crook, killed instantly as a result of injuries received in this accident?

"Yes.

"Did the deceased, Viola Crook, live for any period of time after the accident?

"No.

"Did the defendant, Margaret Eckhardt, as a part of the consideration of hiring Viola Crook agree to furnish transportation to and from the summer camp?

"Yes."

Motions, by defendants, for a judgment *non obstante veredicto* and for a new trial were denied.

Appellant Eckhardt claims the testimony shows that Mrs. Crook was a guest and not a passenger for hire; that her death was not instantaneous; that an administrator cannot recover damages under the death act for the husband's loss of his wife's services, etc.; that the record does not contain any proof of the pecuniary loss suffered by the husband; that the charge on the elements of the instantaneous death was erroneous; and that the verdict of the jury was contrary to the great and overwhelming weight of the evidence and its award of damages was excessive.

The foregoing questions are also raised by appellant Grand Rapids Bedding Company, to which it added that the court erred in instructing the jury as to recovery against it without regard to the negligence of Margaret Eckhardt and with respect to the speed of both vehicles.

If plaintiff's decedent was a guest passenger, the negligence of the defendant Eckhardt is imputed to Viola Crook, but not if she was a passenger for hire. *Lachow* v. *Kimmich*, 263 Mich. 1 (90 A. L. R. 626, 32 N. C. C. A. 579); *Johnson* v. *Mack*, 263 Mich. 10; *Wojewoda* v. *City of Detroit*, 264 Mich. 277. See, also, *Caswell* v. *Railroad Co.*, 263 Mich. 18.

In *McGuire* v. *Armstrong*, 268 Mich. 152 (36 N. C. C. A. 252), defendant Armstrong, a county nurse, was taking Mrs. McGuire, a county or township patient, to Grand Rapids for the purpose of having glasses fitted for her eyes, and neither Mrs. McGuire nor her husband was paying for the treatment or transportation. We said, "The word 'guest' connotes both a social relationship and the existence of a host. Neither situation is present in this case," and we held that Mrs. McGuire was not a guest passenger.

In the recent case of *Cardinal* v. *Reinecke*, 280 Mich. 15 (quoting the syllabus):

"Teacher in school of beauty culture who, at request of defendant, accompanied her and her two daughters on a trip to investigate possible opening for one of the daughters, a former pupil, as an operator in a beauty parlor, *held,* not a mere guest passenger, hence entry of judgment for defendant on ground plaintiff was a guest passenger was error (1 Comp. Laws 1929, § 4648)."

Defendant Eckhardt's testimony. that. she was transporting Mrs. Crook "as an accommodation" is

in direct conflict with the testimony of Francis
Crook that the transportation was a part of the con-
sideration of the contract of hire. The nature of the
relationship was a question of fact for the jury to
whom the question was given by the court under a
charge of which no complaint is made, in this par-
ticular, by either appellant. See *McGuire* v. *Arm-*
*strong, supra,* and authorities quoted and cited
therein.

The testimony as to whether or not Viola Crook's
death was instantaneous was also conflicting. Dr.
Colwell, the coroner, upon examination of the body,
found a fracture of the third cervical vertebra, frac-
ture of the left kidney, fracture of the spleen, a
massive hemorrhage and the spinal cord mutilated
and badly damaged. In his opinion these injuries
would have caused instant death. No objection was
made to his testimony. Deputy Sheriff Coleman
said Mrs. Crook was still breathing when he arrived.
Undersheriff Reese, when asked whether or not he
observed whether the lady in the field was breathing,
said:

"We certainly considered she was or we would not
have removed her."

Upon cross-examination, it developed that Reese
did not make any tests to ascertain if there was life.
An ambulance attendant, Lawther, also said Mrs.
Crook was breathing, but that there were no other
signs of life except movements of the chest. He
could not say whether the breaths were short or long
or deep.

"Although the testimony as to signs of life is
conflicting and 'the question is an exceedingly close
one * * * and * * * even though we might have
disagreed with the jury's determination were we a

fact-finding body,' nevertheless, under the authority of *Micks* v. *Norton,* 256 Mich. 308, 311, and *Bos* v. *Gaudio,* 267 Mich. 517 (both so recently decided that we refrain from quotation), and the authorities cited in the latter case at page 520, this testimony was sufficient to take the question of decedent's survival to the jury." *Anderson* v. *Jersey Creamery Co.,* 278 Mich. 396, 404.

The question of the right of a husband to recover the value of his wife's services, under both the survival act (3 Comp. Laws 1929, § 14040) and the death act (3 Comp. Laws 1929, §§ 14061, 14062), is discussed and the authorities collected in *Bugbee* v. *Fowle,* 277 Mich. 485, decided a few days after the trial court's denial of defendant's motion *non obstante veredicto* in the instant case. The *Bugbee Cases,* one by the husband individually and the other in his capacity as administrator, were both brought under the survival act. We said in that opinion:

"Neither the death act nor the survival act contains language expressly providing for recovery by a surviving spouse and we must look to the common law for such authority."

*Hyatt* v. *Adams,* 16 Mich. 180, is authority for the right of a spouse to recover and the rule there stated for ascertaining the measure of damages under the survival act where the unlawful death was not instantaneous, was adhered to in the *Bugbee Case, supra.*

The peculiar character of the recovery permitted under the death act was stated in *Lincoln* v. *Railway Co.,* 179 Mich. 189 (51 L. R. A. [N. S.] 710), and the distinction between an action under the survival and death statutes was shown. The death act (Act No. 38, §2, Pub. Acts 1848), (3 Comp. Laws 1929, § 14062), provides:

''Every such action shall be brought by, and in the names of, the personal representatives of such deceased person,'' etc.

This court said in the *Lincoln Case, supra:*

''We think that the profession in this State would be surprised were we to hold, at this late day, that the father or mother of a minor child who has been instantaneously killed by the wrongful act of a defendant, could not, through an administrator, maintain a suit for damages, or a husband for the wrongful death of a wife. Such right has been recognized in many cases in this State.''

See authorities cited in the *Lincoln Case, supra,* page 205, including *Grand Trunk Western R. Co.* v. *Gilpin,* 125 C. C. A. 278 (208 Fed. 126), where it was held under the Michigan statute that an action may be maintained by a husband, etc., where death of the wife was instantaneous.

A husband recovered damages in an action brought in his own name for the instantaneous death of his wife in *Scurlock* v. *Peglow,* 263 Mich. 658, but the question of his right to recover was not discussed or determined, decision in that case resting on other questions which were involved in the appeal.

Appellants say the proofs were insufficient on the value of Mrs. Crook's services. Francis Crook testified at length regarding the surroundings of the parties and the nature of the services performed by his wife in their home at Wayne, Michigan, but did not place any money value on the services.

The observation of Mr. Justice FELLOWS in an action brought under the survival act for the loss of services of a minor is also applicable here.

''Speaking for myself, I think we should follow the *Hurst Case* (*Hurst* v. *Railway,* 84 Mich. 539), and hold that plaintiff was bound to establish by

evidence of the value of the services and the cost of maintenance his pecuniary loss and the amount thereof, but my Brethren are agreed that we should follow the *Black Case* (*Black* v. *Railroad Co.,* 146 Mich. 568) and hold that although such testimony is competent and admissible, it is not necessary where the surroundings of the parties are shown, leaving to the jury to fix the damages from their personal knowledge and experience." *Pratt* v. *Detroit Taxicab & Transfer Co.,* 225 Mich. 147.

A verdict of $6,558.90, covering the funeral expenses of $444 and the loss by a husband of services of his wife, a healthy married woman, aged 30, whose expectancy of life was 35.33 years, is not excessive. As was said in *Watrous* v. *Conor,* 266 Mich. 397:

"We do not substitute our judgment on this question unless a verdict has been secured by improper methods, prejudice or sympathy. *Michaels* v. *Smith,* 240 Mich. 671. No such showing has been made, nor were the verdicts so great as to shock the judicial conscience. *Sebring* v. *Mawby,* 251 Mich. 628."

See, also, *Pratt* v. *Detroit Taxicab & Transfer Co., supra.*

Appellants say the court was in error in charging the jury regarding the term "instantaneous death." We quote the following from the charge:

"Where there is a continuing injury, resulting in death within a few moments, it is instantaneous within the meaning of this statute. The recognized test in this State distinguishing between the two causes of action, survival and instantaneous death, is whether the active cause of death continued to operate directly upon the injured person until life was extinct, and it follows, from this definition, that if the deceased survived any appreciable length of

time, even though in an unconscious condition, that the plaintiff cannot recover in this action, because death would not be instantaneous under the definition as laid down by the Supreme Court.''

We need not cite authorities supporting this well-known statement of the law nor those which require the charge to be considered in its entirety and not by sentences or parts thereof.

The question of the negligence of the defendants was one of fact for the jury and their verdict is not contrary to the great and overwhelming weight of the evidence.

Appellant Grand Rapids Bedding Company assigns error because the court eliminated any question of the negligence of defendant Eckhardt being imputed to plaintiff's decedent. Since the jury found, by its answer to the third special question, that plaintiff's decedent was a passenger for hire, defendant company was not prejudiced by the court's refusal to charge further upon the question of imputed negligence and it is unnecessary for us to pass upon this assignment of error.

The question of the speed of the two vehicles as they approached the intersection was adequately covered by the court's charge to the jury.

The judgment is affirmed, with costs to appellee.

FEAD, C. J., and NORTH, WIEST, BUTZEL, SHARPE, POTTER, and CHANDLER, JJ., concurred.