GRIMES v. KING.

1. EVIDENCE—INFERENCES DRAWN BY JUDGE.
   It is the province of the trial judge in a nonjury case to draw legitimate inferences from the established facts and to weigh the probabilities from such established facts.

2. NEGLIGENCE—CIRCUMSTANTIAL EVIDENCE—RES IPSA LOQUITUR.
   The holding of the Supreme Court that cases may be made by circumstantial evidence is not the adoption of the rule *res ipsa loquitur*, which is not favored by this court.

3. EVIDENCE—NONJURY LAW CASE—WEIGHT OF EVIDENCE.
   In cases tried without a jury the trial judge is the trier of the facts and may give such weight to the testimony as in his opinion it is entitled to.

4. APPEAL AND ERROR—NONJURY LAW CASE—PREPONDERANCE OF EVIDENCE.
   In reviewing cases tried without a jury the finding of the trial judge will not be reversed unless the evidence clearly preponderates in the opposite direction.

5. NEGLIGENCE—PARAPET WALLS—EXAMINATION.
   Merely looking at a brick parapet wall on the top of a two-story building by its owner is not a sufficient examination thereof to determine whether it would be safe for the wall to remain in its position, especially where evidence shows fractures existed prior to collapse.

6. APPEAL AND ERROR—NONJURY CASE—WEIGHT OF EVIDENCE.
   A trial judge sitting without a jury may discredit the testimony of a party when other testimony indicates that he may have been mistaken, and Supreme Court may not substitute its judgment in such an instance for that of the trial court.

7. NEGLIGENCE—PARAPET WALL—REPAIRS—EVIDENCE.
   In action by administrator of estate of pedestrian who was killed on street sidewalk when parapet wall on top of de-

---

Land possessor's liability for conditions dangerous to travellers upon adjacent highway, see 2 Restatement, Torts, § 368.

fendant's two-story building fell while high wind was blowing, evidence was ample to sustain conclusion that the wall was improperly constructed and in need of repair at the time of the accident.

8. NUISANCES—ARTICLES FALLING UPON PERSONS IN A STREET—ACCIDENT.

Persons traveling upon a public street have a right to absolute safety, while in the exercise of ordinary care, against all accidents arising from things so situated with reference to the street that if they fall they will do injury to such travelers, as such things are nuisances unless so secured as to be absolutely safe, and person maintaining them is liable for all injuries arising therefrom, except such as are attributable to inevitable accident.

9. SAME—BUILDING ABUTTING HIGHWAY—DUTY OF OWNER—INSPECTION.

Since a building abutting on a highway must be so constructed and maintained that it will not fall and injure persons lawfully on the highway, the owner is bound to use reasonable care and skill in constructing and maintaining it and inspect it from time to time, although such owner is not an insurer of persons on the highway, else building will be a nuisance and owner liable for damages resulting from breach of duty.

10. NEGLIGENCE—EVIDENCE—FINDING OF COURT—PARAPET WALL.

In action by administrator of estate of person who was killed on sidewalk of street in front of defendant's two-story building topped by a parapet wall which fell while a high wind was blowing, evidence did not clearly preponderate in opposite direction from finding of trial judge, sitting without a jury, that defendant owner of building was negligent in maintaining wall.

11. DEATH—STATUTES—AMENDMENT OF DEATH ACT.

The purpose of the amendment to the death act was to enable a person to bring his action thereunder regardless of whether there was instantaneous death or survival of the injured person and to provide to what person or persons the damages recovered should be distributed (3 Comp. Laws 1929, § 14061 et seq., as amended by Act No. 297, Pub. Acts 1939).

12. SAME—DAMAGES—LOSS OF WIFE—PECUNIARY INJURY TO HUSBAND.

In husband's action under the death act as amended for damages arising because of death of wife, while he has no legally enforceable claim to support or maintenance by deceased he

was entitled to the value of her services less the reasonable cost of her maintenance (3 Comp. Laws 1929, § 14061 *et seq.,* as amended by Act No. 297, Pub. Acts 1939).

13. SAME—DAMAGES—LOSS OF WIFE—PECUNIARY INJURY TO HUSBAND—ESTABLISHED EARNING CAPACITY.

An administrator's right to recover under the death act as amended is not limited to the pecuniary loss suffered by the husband of a childless woman for the value of his wife's services where it appears she had an established earning capacity as a music teacher (3 Comp. Laws 1929, § 14061 *et seq.,* as amended by Act No. 297, Pub. Acts 1939).

14. SAME—DAMAGES—LOSS OF WIFE—EARNING CAPACITY—EXPECTANCY.

Verdict of $8,535.33 in action under death act as amended, brought to recover damages for funeral expenses, loss of earnings and compensation for wrongful death of 42-year-old childless married woman with an expectancy of 26.72 years who had an earning capacity of from $25 to $30 a week as a music teacher, *held,* not excessive (3 Comp. Laws 1929, § 14061 *et seq.,* as amended by Act No. 297, Pub. Acts 1939).

NORTH, BOYLES, and REID, JJ., dissenting.

Appeal from Wayne; Miller (Guy A.), J. Submitted January 5, 1945. Docket No. 49, Calendar No. 42,937.) Decided May 14, 1945. Rehearing denied December 3, 1945.

Case by Columbus Grimes, administrator of the estate of Estella M. Grimes, deceased, against Joseph B. King for damages arising from death of decedent caused by coping stone, brick and mortar falling from defendant's building. Judgment for plaintiff. Defendant appeals. Affirmed.

*Harold W. Geddes,* for plaintiff.

*William A. Rhodes,* for defendant.

*Maurice Miller, amicus curiae,* on petition for rehearing.

BOYLES, J. (*dissenting*). Between 3:30 and 4 o'clock in the afternoon of March 17, 1943, Estella

M. Grimes was killed by a fall of coping stone, brick and mortar blown by an unusually high wind from a parapet wall on the top of a two-story building, while she was walking along the sidewalk in Hastings street, Detroit. The front wall of the building was 6 or 8 inches inside the sidewalk and the building was owned by the defendant. Her husband, as administrator of her estate, brought this suit claiming damages for funeral expenses, loss of earnings, and compensation for wrongful death. The case was heard by the circuit judge without a jury, and the court found that the defendant was guilty of negligence in that the wall was improperly constructed, had never been inspected by the defendant, and that defendant's negligence was the proximate cause of the death. Judgment in the sum of $8,535.33 was entered for plaintiff, from which the defendant appeals.

The major question involved in the case is this: Was the defendant guilty of negligence which was a proximate cause of the accident?

The record leaves no room for doubt that the coping stone, brick and mortar were blown down from the parapet wall by an unusually high wind. There were no plainly discernible defects in the parapet wall or coping to outwardly indicate a hazardous or unsafe condition. Notwithstanding the finding of the circuit judge that: "There is not one scintilla of evidence in the case to show that the owner of this building had ever, during the entire time of his ownership, made an inspection, or caused an inspection to be made of this parapet wall," such evidence is in the record. The defendant testified that about a month before the accident occurred:

"I had no notice of any irregularity to that building. I examined the building. * * * I looked

at the parapet walls. No irregularity attracted my attention. I couldn't see anything wrong."

There is nothing in the record to dispute that testimony. The circuit judge was clearly wrong in finding that the defendant had never inspected the parapet wall. The record is silent as to the length of time the building had been built, but a photograph received in evidence indicates that the front was of modern design and recent construction. The record does not show whether defendant purchased the building after construction, or had it built.

There was testimony pro and con as to whether the parapet wall consisting of bricks, mortar and a stone coping was properly constructed. It was a parapet constructed about 16 inches higher than the balance of the wall. A witness who qualified as an expert mason and bricklayer testified that the mortar used was not good enough for the purpose of a parapet wall; a city building inspector testified to fractures in the wall above the second floor windows below the parapet, extending up to but not into the parapet wall. There was testimony that the parapet wall was an 8-inch veneer without headers between the inside and outside layers. There was testimony that the inside and outside brick layers were not laid up with full mortar, without mortar between the two. There was testimony that after the accident bricks were picked up on top of the remaining wall noticeably lacking in mortar. There also was testimony that an improper construction results in water freezing in interstices between bricks, with consequent loosening of a wall.

The mere fact that the stone coping, bricks and mortar fell onto the sidewalk is not in itself proof of negligence. Plaintiff relies on language of this court in *Barnowsky* v. *Helson*, 89 Mich. 523 (15

L. R. A. 33). Notwithstanding what was said in that case, the doctrine of *res ipsa loquitur* does not apply in this State. *Hulett* v. *Great Atlantic & Pacific Tea Co.*, 299 Mich. 59. However, while proof of an accident and resulting injury is not alone sufficient to establish liability, the fact that the accident happened may be considered along with proof of other circumstances to determine whether negligence existed. *In re Estate of Miller*, 300 Mich. 703. In this case the proof of negligence in the construction of the parapet wall is meager. However, the testimony presented an issue of fact which was decided by the circuit judge, hearing the case without a jury, as sufficient to establish the negligence of the defendant.

Was proof of negligence in the construction of the parapet wall sufficient to prove the defendant guilty of negligence which was the proximate cause of the accident? There was testimony that the average wind velocity for Detroit on an annual basis is 12 miles per hour; that the average wind velocity between 3 and 4 o'clock on the afternoon in question was 31 miles per hour, the "maximum" velocity 43, and the "extreme" velocity 68 miles per hour at 3:33 p.m., approximately the time of the accident. This velocity was measured at the Detroit city airport, several miles from the place of the accident. It was the greatest wind velocity measured there during a 30-year period of time. There was no direct testimony as to the velocity of the wind between 3:30 and 4 p.m. at the place of the accident except that there was a very high wind there at that time. There was undisputed testimony that the average downtown velocity and the extreme velocity in downtown Detroit was usually "surprisingly close" to that measured by the weather bureau at the airport.

The record is plain that the defendant had no actual notice or knowledge of defects in the construction of the parapet wall. It is also apparent that such defects were not readily discoverable by an outward inspection and there is no proof that the claimed defects could have been discovered by inspection, except by taking apart some of the parapet wall. There is no proof that the parapet wall would not be able to resist the strain of any unusual or extraordinary high wind that might be likely to occur in Detroit, based upon past experience in that locality. The testimony is undisputed that the wind velocity at the time of the accident was the greatest experienced in the locality in at least 30 years. The record is conclusive that this was not such a high wind as would be likely to occur in Detroit based upon past experience in that locality.

In *Wilkinson* v. *Detroit Steel & Spring Works*, 73 Mich. 405, the plaintiff while in the public street was injured by a slate roof falling into the street from the top of defendant's rolling-mill. The court said (p. 417):

"The law imposed upon the defendant, when it exercised its lawful right of constructing a rolling-mill upon its premises adjoining a public highway, the duty towards the general public, having the right of passing along or lawfully being in that highway, to so erect it as to render it reasonably safe, and sufficiently strong, not only to resist the strain upon the supporting timbers of the roof, but strong enough to support the roof, at all seasons, in all ordinary weather; and also under such extraordinary occurrences as were likely to arise in that locality, based upon past experience."

In *Lauer* v. *Palms*, 129 Mich. 671 (58 L. R. A. 67), a wall left standing after a fire either fell down or

was blown down by a very high wind, injuring the plaintiff. The defendant claimed the wall was blown down by an unusually high wind. On appeal this court approved the charge of the trial judge to the jury, as follows (p. 674):

"An unsafe condition would be such a condition that it would not be able to resist the elements under the ordinary circumstances which might exist in that locality, or under such extraordinary circumstances as might happen in that locality, judging from past experience. That is, if this blow which arose and resulted in the throwing down of the wall caused it to fall because of the weak condition of that wall, which had existed prior to December 11th, these remarks apply. If it was an extraordinary blow, such as experience in that locality would not have forecast as possible, then 'the liability would not attach.''

Plaintiff relies on *Hass* v. *Booth*, 182 Mich. 173, where plaintiff was injured by the falling of an advertising sign, 8 feet long, 4 feet wide and 8 inches thick, erected by defendant 20 to 25 feet above a sidewalk. The sign fell of its own weight, no claim being made of a high wind or other intervening cause. The court considered that encroachments, signboards and other things projecting over a sidewalk were public nuisances. The factual difference between a signboard over the sidewalk, falling of its own weight, and the parapet wall in the case at bar, erected on the owner's land, being blown down by an extraordinary high wind obviously distinguishes the *Hass Case* from the case at bar. The sign fell without any apparent immediate and intervening cause, such as the high wind in the instant case. Furthermore, the sign projected over the sidewalk while defendant's parapet wall was on his own land.

In *Jacobs* v. *Hagenbeck-Wallace Shows,* 198 Mich. 73 (L. R. A. 1918 A, 504, 16 N. C. C. A. 535), the plaintiff was injured by the poles and stakes of a circus tent being pulled out in a storm of short duration accompanied by a high wind. In reversing a judgment for plaintiff on account of error in charging the jury the court said (p. 90):

"Defendant was bound to anticipate the ordinary usual storm of the season and latitude and its probable consequences, reference being had to the character of the structure to which the public was invited, and in view of such a storm arising, and in view of its probable consequences, it was bound to use ordinary care in the selection and erection of the tent. If it did this upon the occasion here in question, it is not liable in this action. If it did not, then it may be liable unless the storm was so violent in character that, whether defendant was or was not negligent, in the respects indicated, the result would have been the same; unless to the storm may be charged whatever occurred."

The duty owed by the defendant to the public in the case at bar is to some extent similar to the duty owed by the owner of any property to invitees, to maintain premises with proper care to avoid accidents due to negligence. The principle of law is somewhat similar to that settled by this court in cases where an invitee suffers injury from defects in premises due to lack of care exercised by the owner in maintaining his premises.

"Where the charge of negligence is the failure to maintain the premises in a reasonably safe condition, we have always insisted upon proof that the unsafe condition was known to the one on whom the duty rested, or that the character of the danger or the passage of time was such that knowledge of the

menace should have come to the reasonably prudent incumbent." *Oppenheim* v. *Pitcairn*, 293 Mich. 475, 477.

In *Weissert* v. *City of Escanaba*, 298 Mich. 443 (10 N. C. C. A. [N. S.] 393), plaintiff, a 12-year-old boy, was injured by picking up an electric light wire which had been blown down a few hours previously by a high wind in a storm. This accident occurred near a public highway, and not on the premises of the defendant. The court said (p. 454):

"In the absence of any proof that the circumstances were such as the defendant might have had a reasonable forecast as to what was likely to happen, taking into account its own past experience and the experience and practice of others in similar situations, it was not negligent in its failure to make discovery, and we think it was clearly error on the part of the court, under the proof in this case, to submit the question of defendant's negligence to the jury."

Even conceding that a greater burden of care is placed on the defendant in this case to safeguard the public using the sidewalk, the defendant must not be considered an insurer of public safety. To do so would invoke without exception the doctrine of *res ipsa loquitur*—that the mere fact that the parapet wall was blown down would establish the negligence of the defendant. Negligence is not presumed but must be proven. In this case the facts and circumstances shown by the record fall short of proving that the defendant was guilty of negligence either as a contributing or a proximate cause of the injury.

The judgment should be set aside without new trial.

NORTH and REID, JJ., concurred with BOYLES, J.

BUSHNELL, J.   I am unable to agree with the conclusion reached by Mr. Justice BOYLES.   This case was tried by a circuit judge sitting without a jury. We should not reverse in such instances, unless the evidence clearly preponderates in the opposite direction.

As said in *Hazen* v. *Rockefeller*, 303 Mich. 536, 547, quoting from *Detroit Trust Co.* v. *Hartwick*, 278 Mich. 139, 151:

" 'It is the province of the trial judge in a nonjury case to draw legitimate inferences from the established facts and to weigh the probabilities from such established facts.' "

And quoting from *Heppenstall Steel Co.* v. *Railway Co.*, 242 Mich. 464, 468:

" 'This court has uniformly held that cases may be made by circumstantial evidence.   This is not the adoption of the rule *res ipsa loquitur*, a rule not favored by this court.   It has always been the rule of this jurisdiction that the jury should be permitted to draw legitimate inferences from the established facts.' "

See, also, *Barnowsky* v. *Helson*, 89 Mich. 523 (15 L. R. A. 33); *Elsey* v. *J. L. Hudson Co.*, 189 Mich. 135 (L. R. A. 1916 B, 1284); *Macres* v. *Coca-Cola Bottling Co.*, 290 Mich. 567.

Again, as said in the *Hazen Case*, quoting from *Hanson* v. *Economical Cunningham Drug Stores, Inc.*, 299 Mich. 434:

" 'In reviewing a judgment entered by a trial judge sitting without a jury we are limited by the rule laid down in *Jones* v. *Eastern Michigan Motorbuses*, 287 Mich. 619.   *   *   *   This rule was recently summarized in *Eagan* v. *Edwards*, 294 Mich. 260, by the following quotation from *Vannett* v. *Michigan Public Service Co.*, 289 Mich. 212, 218:

" 'We have repeatedly said in cases tried without a jury that the trial judge is the trier of the facts and may give such weight to the testimony as in his opinion it is entitled to. In such cases we do not reverse unless the evidence clearly preponderates in the opposite direction.' "

The trial judge said:

"There is not one scintilla of evidence in the case to show that the owner of this building had ever, during the entire time of his ownership, made an inspection, or caused an inspection to be made of this parapet wall."

Defendant King testified that, after complaints from tenants that the center roof was leaking, he had the "flat part" repaired and he had the tinner "examine the rest of the roof and everything up there." King's own examination disclosed that there were leaks near the alley; and he stated that he "looked at the parapet walls" and no irregularity attracted his attention. He said: "I couldn't see anything wrong."

While the defendant may not have expressed himself too clearly, it is fair to conclude, as did the trial judge, that merely looking was not the sort of an examination required. This is particularly true in view of the testimony of a city building inspector who, after the accident, found fractures lower down in the walls, indicating that they had already existed prior to the collapse of the parapet.

A trial judge sitting without a jury may discredit the testimony of the owner of a building when other testimony indicates that he may have been mistaken, and we may not substitute our judgment in such an instance for that of the trial judge. *In re Hallenbeck's Estate, ante,* 21.

The record contains ample testimony to permit the conclusion that the parapet wall was improperly constructed and in need of repair at the time of the accident.

A meteorologist of the United States Weather Bureau testified that there was a high wind on the day in question and that at 3:33 p.m., about the time of the accident, its extreme velocity was 68 miles an hour at the Detroit City Airport, the highest velocity since a wind of 66 miles an hour on March 21, 1913.

The trial judge held that proper construction requires a factor of safety sufficient to resist a wind velocity of twice that experienced in the locality. He commented on the fact that at the time of the accident decedent and her companions were walking toward the north on the east side of the street along the two-story building, into the wind with their heads down, indicating that the wind was coming from the north and northwest. He stated that it was reasonable to conclude that a wind from either direction would cause the north and south parapet wall to fall inward upon the roof. He reasoned from the way the wall fell that it was impossible to say that the wind of itself blew the wall over into the street.

As stated in *Hass* v. *Booth*, 182 Mich. 173, 177, quoting from 1 Wood on Nuisances (3d Ed.), § 275, pp. 348, 350:

" 'Every person in traveling upon a public street has a right to absolute safety, while in the exercise of ordinary care, against all accidents arising from obstructions of or imperfections in the street, and this applies as well to what is in the street as to what is over it.   *   *   *   It would seem that all signboards, cornices, blinds, awnings, and other

things projecting over a walk, or so situated with reference thereto that if they fall they may do injury to travelers, * * * are nuisances, unless so secured as to be absolutely safe, and the person maintaining them is liable for all injuries arising therefrom, except such as are attributable to inevitable accident.' "

In *Bannigan* v. *Woodbury*, 158 Mich. 206 (133 Am. St. Rep. 371), where a window glass fell from the third story of a building and injured a pedestrian, it was held that the unsafe condition of the windows as described in the declaration constituted a cause of action for which somebody should be held responsible, and that it was the duty of one in control and possession to keep the premises in a safe condition so as to protect travelers along the streets. See, also, *Dombrowski* v. *Gorecki*, 291 Mich. 678, 681, and *Nezworski* v. *Mazanec*, 301 Mich. 43, 56.

In *Detzur* v. *Stroh Brewing Co.*, 119 Mich. 282 (44 L. R. A. 500, 5 Am. Neg. Rep. 371), plaintiff was injured by glass falling from an upper story window in a building which stood but a few feet from the street. The court found that there was evidence to sustain "the inference that the injury resulted from a careless disregard of the broken and loosened condition of glass in a window above a street where pedestrians were frequently passing." On the subject of proximate cause, the court said:

"Counsel contend that if the glass fell by means of its being dislodged by the wind, the negligence of the defendant was not the proximate cause of the injury, and they complain of a refusal to instruct the jury that in such event the plaintiff should not be allowed to recover. The negligence complained of is the maintenance of a window in such a condition that the glass was liable to fall out; not necessarily from its own weight, but under the natural

conditions and strain to which it was likely to be subjected. It might not be negligent to leave a broken pane, if assurance could be given that it would be undisturbed by wind or by use. But wind is an every-day occurrence. It is a condition, not necessarily a cause, and one which should be taken into consideration before determining that a broken glass is not likely to fall. The wind may have been a concurring circumstance, but it cannot be said to have been the proximate cause, and the broken glass the remote cause. It cannot be true that a defendant who is liable if a defective glass falls from its own weight on a quiet day is to be relieved from responsibility because its fall is due to the pressure of a wind which should have been anticipated.''

See, also, *Wilmarth* v. *Michigan United Traction Co.*, 198 Mich. 428, 432.

The general rule is stated in 7 A. L. R. p. 205, as follows:

''A building abutting on a highway must be so constructed and maintained that it will not fall and injure persons lawfully on the highway. While the owner or person in control of such a structure is not an insurer, he is bound to use reasonable care and skill in the construction and maintenance of the building, and he is obliged to inspect from time to time. If the building or any part thereof, when constructed or purchased, is in an inherently dangerous condition so that it is liable at any time to fall and injure persons in the highway, or if it becomes in such condition by reason of use or mismanagement, it is a nuisance, and the person whose duty it is to remedy the defect must do so within a reasonable length of time after the creation of the nuisance.''

See annotation of authorities in 7 A. L. R. p. 204 *et seq.*, and 138 A. L. R. p. 1078 *et seq.*

Regardless of any difference as to the import of the testimony, we should not reverse unless the evi-

dence "clearly preponderates in the opposite direction." This I cannot say.

Appellant argues that damages for loss of earnings cannot be awarded, under 3 Comp. Laws 1929, §§ 14061, 14062, as amended by Act No. 297, Pub. Acts 1939 (Stat. Ann. 1944 Cum. Supp. §§ 27.711, 27.712), where there is no evidence that anyone entitled to bring the action suffered a pecuniary loss, and since the surviving husband is the only one to benefit, there must be evidence as to his age or life expectancy, the cost of maintenance of the deceased, and proof of pecuniary benefit from the deceased to him during her lifetime.

The record is silent as to the heirs at law of the deceased other than her husband, she being childless, and we are not informed about the condition of her estate. We are merely told that, as a music teacher, she had an earning capacity of from $25 to $30 per week, was 42 years old, with an expectancy of 26.72 years, and "did what she pleased with the money she earned."

The nature of the cause of action created by the amended act is discussed in *Re Olney's Estate*, 309 Mich. 65. As therein stated, the 1939 act does not repeal the death act (3 Comp. Laws 1929, § 14061 *et seq.* [Stat. Ann. § 27.711 *et seq.*]). Instead, the obvious purpose of the 1939 act was to enable a person to bring his action under this statute regardless of whether there was instantaneous death or survival of the injured person and to provide to what person or persons the damages recovered should be "distributed." See, also, *In re Venneman's Estate*, 286 Mich. 368.

Here, the death was instantaneous, and as was said in the *Olney Case*, the surviving husband can recover for loss of services "less reasonable cost of her maintenance." See *Gorton* v. *Harmon*, 152

Mich. 473 (15 Ann. Cas. 461). It should be noted that recovery in the cited case was under the provision of the death act that there can be recovery "for pecuniary loss," and the same provision is embodied in the 1939 act. This element of damages is recoverable in the instant case.

The administrator's right to recover is not limited to the pecuniary loss suffered by the husband for the value of his wife's services. The deceased had an established earning capacity as a music teacher and had she lived throughout her expectancy could have added to the worth of her estate in which her heirs at law would participate. Under the statutory provisions, *supra,* they would also participate in the distribution of the damages assessed and collected.

In *Crook* v. *Eckhardt,* 281 Mich. 703, where action was brought by the husband as administrator, the court sustained a "verdict of $6,558.90 covering the funeral expenses of $444 and the loss by a husband of services of his wife, a healthy married woman, aged 30, whose expectancy of life was 35.33 years." In that case the deceased was a school teacher and housewife and the defense was interposed that the record did not contain any proof of the pecuniary loss suffered by the husband and that the damages were excessive.

In the light of our discussion of the applicable law in the *Crook Case,* and our affirmation there of the damages assessed, the judgment entered in the instant case is affirmed, with costs to appellee.

STARR, C. J., and WIEST, BUTZEL, and SHARPE, JJ., concurred with BUSHNELL, J.