HARDY v MAXHEIMER

JOHNSON v MAXHEIMER

Docket Nos. 77350, 77351, 78328, 78329. Submitted October 4, 1985, at Lansing.—Decided February 18, 1986. Leave to appeal applied for.

Plaintiffs, Suzie Hardy, personal representative of the estate of Derick Holland, deceased, and Betty Jean Johnson, personal representative of the estate of Curtis Mathews, deceased, brought separate wrongful death actions in the Genesee Circuit Court on August 5, 1983. The decedents had drowned on September 2, 1979, when their canoe capsized at Mott Lake in Genesee County. Named as defendants in both actions were Ronald Maxheimer, individually and doing business as Flint Canoe Livery, from whom the canoe was rented, and the County of Genesee, which allowed the canoe rental operation pursuant to contract. Defendants responded with motions for accelerated judgment in both actions, claiming that the period of limitation had run on these claims. The trial court, Harry B. McAra, J., denied the motions and certified the orders as final pursuant to GCR 1963, 518.2. The trial court also ordered that the cases be consolidated for purposes of further proceedings and trial. Defendants' applications for leave to appeal from the orders were granted by the Court of Appeals and the appeals were consolidated. *Held:*

1. The saving provision found in MCL 600.5852 which requires that an action "survive by law" does not extend the period of limitation in a wrongful death action, MCL 600.2922, where the death is instantaneous (*i.e.*, occurred simultaneously with the alleged wrongful act).

2. The statute of limitations applicable to negligence claims

· REFERENCES

Am Jur 2d, Courts §§ 189, 201.

Am Jur 2d, Death §§ 25, 26, 35-46, 120-122.

Am Jur 2d, Limitation of Actions §§ 102-106.

Survivability of civil rights cause of action based on 42 USCS § 1983. 42 ALR Fed 163.

Effect of delay in appointing administrator or other representative on cause of action accruing at or after death of person in whose favor it would have accrued. 28 ALR3d 1141.

See the annotations in the ALR3d/4th Quick Index under Death.

governed the filing of these claims, thus, the three-year period of limitation on these claims provided in MCL 600.5805(8) would have expired on September 2, 1982, absent an applicable saving or tolling provision.

3. Application of the saving provision found in MCL 600.5852 is limited to survival actions.

4. Where a cause of action does not exist before a decedent's death, it cannot be said to have survived the death. Rather, when the wrongful act and death occur simultaneously, the cause of action arises at death. The determination of whether an action "survived by law" for purposes of applying the saving provision found in MCL 600.5852 is to be made by distinguishing between instantaneous death (*i.e.*, a death action) and noninstantaneous death (*i.e.*, a survival action).

5. The Court of Appeals is bound by the doctrine of stare decisis to follow a 1916 Supreme Court decision wherein the Court held that drowning constituted instantaneous death. Where there is a continuing injury resulting in death within a few minutes, death is instantaneous.

6. The deaths in this case were instantaneous, therefore, plaintiffs were not entitled to invoke the saving provision of MCL 600.5852. Defendants shall have accelerated judgment.

Reversed and remanded for proceedings consistent with the opinion.

R. M. SHUSTER, J., dissented. He would apply the saving provision found in MCL 600.5852 to survival-type actions brought under the wrongful death statute, MCL 600.2922, as well as to death-type actions brought under that statute.

OPINION OF THE COURT

1. LIMITATION OF ACTIONS — WRONGFUL DEATH — SURVIVAL ACTIONS — DEATH ACTIONS.

The saving provision for an action which survives by law found in the statute regarding the effect of death before the period of limitation has run does not extend the period of limitation in a wrongful death action where the decedent's death was instantaneous, *i.e.*, occurred simultaneously with the alleged wrongful act; the application of the saving provision is limited to survival actions, *i.e.*, where death was noninstantaneous, occurring after the alleged wrongful act (MCL 600.2922, 600.5852; MSA 27A.2922, 27A.5852).

2. LIMITATION OF ACTIONS — NEGLIGENCE RESULTING IN DEATH OR INJURY.

Negligence resulting in death or injury to a person gives rise to a

three-year period of limitation on a cause of action based on such negligence, absent an applicable saving or tolling provision (MCL 600.5805[8]; MSA 27A.5805[8].

3. ACTIONS — SURVIVAL ACTIONS — DEATH ACTIONS.

A cause of action cannot be said to have survived a decedent's death where it does not exist before the death; a cause of action arises at the time of death when the wrongful act and the death occur simultaneously.

4. COURTS — STARE DECISIS.

The Court of Appeals is bound by the doctrine of stare decisis and may not overturn a decision of the Supreme Court.

5. DEATH — DROWNING — INSTANTANEOUS DEATH.

Death by drowning constitutes instantaneous death.

DISSENT BY R. M. SHUSTER, J.

6. LIMITATION OF ACTIONS — WRONGFUL DEATH — SURVIVAL ACTIONS — DEATH ACTIONS.

*The saving provision for an action which survives by law found in the statute regarding the effect of death before the period of limitation has run applies to survival-type actions and death-type actions brought under the wrongful death statute (MCL 600.2922, 600.5852; MSA 27A.2922, 27A.5852).*

7. DEATH — WRONGFUL DEATH — INSTANTANEOUS DEATH.

*The wrongful death statute was intended to create one single cause of action for death caused by wrongful conduct and to obliterate the distinction between instantaneous death and noninstantaneous death in favor of creating one cause of action where death results from the wrongful conduct of another, either instantaneously or through injuries wrongfully inflicted; under the statute, one cause of action may be pressed for all damages flowing from injuries resulting in death (MCL 600.2922; MSA 27A.2922).*

*Dean, Dean, Segar, Hart & Shulman, P.C.* (by *Leonard B. Shulman*), for plaintiffs.

*Kaufman & Payton* (by *Donald L. Payton* and *Richard Khederian*), for Ronald Maxheimer.

*Wilson, Portnoy & Leader, P.C.* (by *Robert P. Roth*), for Genesee County.

Before: M. J. KELLY, P.J., and ALLEN and R. M. SHUSTER,* JJ.

ALLEN, J. In these appeals by leave granted, we are asked to review our holding in *Ortiz v Ferris,* 128 Mich App 776; 341 NW2d 215 (1983), where it was determined that the saving provision found in MCL 600.5852; MSA 27A.5852 does not extend the period of limitation in a wrongful death action where death is instantaneous. In addition, we are asked to decide whether drowning constitutes instantaneous death as a matter of law.

Plaintiffs are the personal representatives of the estates of the decedents, Derick Holland and Curtis Mathews. Holland and Mathews drowned on September 2, 1979, when their canoe capsized at Mott Lake in Genesee County. Plaintiffs' decedents had rented their canoe from Flint Canoe Livery, which operated pursuant to a contract with the County of Genesee.

Plaintiffs filed their wrongful death actions in Genesee County Circuit Court on August 5, 1983. Defendants responded with motions for accelerated judgment in both actions, claiming that the period of limitation had run on these claims. These causes of action were based on the theory of negligence and, thus, the statute of limitations applicable to negligence claims governed the filing of these claims. *Hawkins v Regional Medical Laboratories, PC,* 415 Mich 420, 436; 329 NW2d 729 (1982). Since negligence resulting in death or injury to a person gives rise to a three-year period of limitation, MCL 600.5805(8); MSA 27A.5805(8), the limitation period on these claims would have expired on September 2, 1982, absent an applicable saving or tolling provision.

Plaintiffs argued that the period of limitation

---

* Circuit judge, sitting on the Court fo Appeals by assignment.

was extended by § 5852, which provides in perti-
nent part:

"If a person dies before the period of limitations has
run or within 30 days after the period of limitations has
run, *an action which survives by law may be com-
menced by* or against the executor or administrator of
the deceased person or the claim may be proved as a
debt against the estate of the deceased person, as the
case may be, *at any time within 2 years after letters
testamentary or letters of administration are granted,*
although the period of limitations has run, * * *. But
no executor or administrator shall bring an action
under this provision unless he commences it within 3
years after the period of limitations has run." (Empha-
sis added.)

The trial court appears to have tacitly held that
this saving provision applies only to survival ac-
tions, where death is noninstantaneous. However,
the court questioned whether the holding of *Beach
v City of St Joseph,* 192 Mich 296; 158 NW 1045
(1916), that death by drowning constitutes instan-
taneous death, should still obtain given modern
advances in medical science. Accordingly, the trial
court denied defendants' motions for accelerated
judgment, certified the orders as final pursuant to
GCR 1963, 518.2, and ordered that the cases be
consolidated for purposes of further proceedings
and trial. Defendants' applications for leave to
appeal from the orders were granted by the Court
of Appeals and the appeals were consolidated.

On appeal, defendants argue that this Court
properly construed *Hawkins* in *Ortiz, supra,* and
that, as a result, § 5852 has no application where
death is instantaneous. Prior to the 1939 consoli-
dation of survival actions and death actions into
Michigan's wrongful death statute, MCL 600.2922;
MSA 27A.2922, these two actions were distin-

guished by determining whether death was noninstantaneous or instantaneous. *Hawkins,* pp 428-431; *Crook v Eckhardt,* 281 Mich 703; 275 NW 739 (1937). Defendants maintain that this distinction is still viable for purposes of applying § 5852, and that the injured party must have had a period of survival in order for the action to have "survived by law".

In contrast, plaintiffs rely on *Hawkins,* contending that § 5852 applies to any action brought under the wrongful death statute, regardless of whether the claim would have been characterized as a death action or survival action prior to 1939. For the following reasons, we believe that plaintiffs' argument is based on a misreading of *Hawkins,* and that *Ortiz* was correctly decided.

In *Hawkins,* a wrongful death medical malpractice case, the Supreme Court rejected the contention that the wrongful death statute created a new cause of action independent of the former death and survival acts. Rather, the Court reaffirmed its holding in *In re Olney's Estate,* 309 Mich 65; 14 NW2d 574 (1944), where it had held that the survival act had not been repealed by the 1939 wrongful death act except insofar as the survival act was inconsistent with the 1939 act. The survival act was simply incorporated into the death act, with the effect that all survival and death actions would thereafter be brought pursuant to a single statute. However, this consolidation of actions did not alter the basic nature of these causes of action.

After recognizing the continuing viability of the distinction between death actions and survival actions, the *Hawkins* Court rejected the argument that under the wrongful death statute the period of limitation commenced running on the date of the decedent's death for both causes of action.

Rather, as had been the case prior to consolidation of these actions in 1939, the *Hawkins* Court held that the limitation period begins running on the date of the wrongful act. Where death is instantaneous (*i.e.,* a death action), the date of the wrongful act and the date of the decent's death will always be identical. However, where death is noninstantaneous (*i.e.,* a survival action), the wrongful act will always precede the decedent's death and, most probably, the date of death.

In *Hawkins,* the act of medical malpractice occurred nine months prior to the date of the decedent's death. Therefore, the claim clearly constituted a survival action. Although suit was not initiated within two years of the wrongful act, the Court held that the § 5852 saving provision applied, stating:

"Any time wrongful conduct results in noninstantaneous death, the claim prosecuted by an appropriate representative is a survival action * * * [which] survives by law the decedent's death pursuant to MCL 600.2921; MSA 27A.2921. There is no reason to doubt * * * that statutory references to actions surviving by law include those actions brought under MCL 600.2922; MSA 27A.2922 for noninstantaneous death resulting from wrongful conduct. Therefore, MCL 600.5852; MSA 27A.5852 operates to extend the time in which to bring such suits." 415 Mich 438.

In *Ortiz, supra,* another wrongful death medical malpractice case, this Court looked to the foregoing language in *Hawkins,* to reach a converse conclusion. Specifically, the *Ortiz* Court held that when wrongful conduct results in instantaneous death it is a death action and does not survive by law the decedent's death. We believe that this holding was supported by *Hawkins,* and by an application of logical reasoning. For, where a

cause of action does not exist before a decedent's death, it cannot be said to have survived the death. Rather, when the wrongful act and death occur simultaneously, the cause of action arises *at* death.

Plaintiffs maintain that *Hawkins, supra,* stands for the proposition that a death action "survives by law" since the Supreme Court expressly overruled *Rhule v Armstrong,* 384 Mich 709; 187 NW2d 223 (1971), which had indicated, *inter alia,* that wrongful death actions were created by the 1939 wrongful death statute and could not survive the decedent's death. Plaintiffs focus on the aspect of *Rhule's* holding which indicated that wrongful death actions could not survive, and conclude that, by overruling *Rhule,* the Supreme Court held that such actions would survive. In making this argument, plaintiffs ignore the primary thesis of *Hawkins, supra,* which was to distinguish between death actions and survival actions. To the extent that *Hawkins* overruled *Rhule,* it simply held that a new cause of action was not created by the 1939 statute, as this statute merely recodified two existing causes of action, and that some actions, specifically survival actions, do survive a decedent's death as a matter of law. See 415 Mich 349.

In addition, plaintiffs point out that in *Hawkins* the Supreme Court cited *Janes v Sackman Bros Co,* 177 F2d 928 (CA 2, 1949), with approval, stating:

"We find the interpretation given to the post-1939 death act and its relationship to the saving provision of MCL 600.5852; MSA 27A.5852, as announced by the federal circuit court in *Janes v Sackman Bros Co, supra,* to be correct." 415 Mich 439.

We acknowledge that this language gives rise to

an ambiguity regarding the extent to which the *Hawkins* Court adopted *Janes'* analysis. In *Janes,* a survival action, the court held that the saving provision[1] did operate to extend the time in which suit could be initiated. The federal court then indicated, in dicta, that it believed the Michigan courts would apply the saving provision to death actions as well, given "the [perceived] legislative attempt to blot out the troublesome distinctions between [instantaneous and noninstantaneous death]". 177 F2d 932.

When the *Hawkins* language which cited *Janes* with approval is read in the context of the entire *Hawkins* opinion, it appears that our Supreme Court did not intend a full-scale adoption of the *Janes* analysis. First, at an earlier point in the *Hawkins* opinion, the Supreme Court summarized the holding in *Janes* without making mention of the language extending the saving provision to death cases:

"In *Janes,* the federal court found that the action was premised on the survival act element of the wrongful death statute since the plaintiff's decedent did not die instantaneously after he was severely burned. The plaintiff was appointed administrator over four years after the death and brought a products liability action. The court found that action 'survived by law' the decedent's death and thus would benefit from the saving provision * * *." 415 Mich 434.

Moreover, the Supreme Court indicates that the legislative purpose in consolidating the death and survival acts "was to enable a person to bring his action under [the 1939 act] regardless of whether there was instantaneous death or survival of the injured person, and to provide to which person or

---

[1] *Janes, supra,* applied the predecessor to the § 5852 saving provision, which was found at MCL 609.18; MSA 27.610.

persons the damages recovered should be 'distributed' ". *Hawkins,* p 433, quoting *Olney,* 309 Mich 82. The purpose was to eliminate confusion regarding under which statute a party should proceed. However, there is no indication that this confusion was to be alleviated for purposes of determining the applicability of the saving provision. Given the unambiguous language of the saving provision, requiring that an action "survive by law", and the entire tenor of the *Hawkins* opinion, indicating that this determination is to be made by distinguishing between instantaneous and noninstantaneous death, we believe that application of the saving provision is limited to survival actions.

In *Beach, supra,* our Supreme Court concluded that drowning constituted instantaneous death, based on the following doctrine:

"Where there is a continuing injury resulting in death within a few moments, it is 'instantaneous' within the meaning of the statute." 192 Mich 303, quoting *West v Detroit United Railway,* 159 Mich 269, 271; 123 NW 1101 (1909).

Plaintiffs argue that, in this day and age, drowning cannot categorically be classified as instantaneous death due to modern techniques which can be used to resuscitate drowning victims. Therefore, they maintain that the determination of whether a drowning is instantaneous death must be decided on the facts of each case. Although we believe that plaintiff's argument has considerable merit, we note that the Supreme Court has never overruled its holding in *Beach, supra.* Since we are bound by the doctrine of stare decisis and are powerless to overturn a decision of the Supreme Court, *Ratliff v General Motors Corp,* 127 Mich App 410, 416; 339 NW2d 196 (1983), we must follow *Beach's* holding.

We hold that under the facts of this case death was "instantaneous" and, therefore, plaintiffs were not entitled to invoke the saving provision of § 5852. Defendants shall have accelerated judgment.

Reversed and remanded for proceedings consistent with this opinion. No costs, a question of public interest being involved.

M. J. KELLY, P.J., concurred.

R. M. SHUSTER, J. *(dissenting)*. I would apply the savings provision found in MCL 600.5852; MSA 27A.5852 to survival-type actions brought under the wrongful death statute as well as to death-type actions brought under that act. The wrongful death statute was intended to create one single cause of action for death caused by wrongful conduct. See *In re Olney's Estate,* 309 Mich 65, 76-78; 14 NW2d 574 (1944) (SHARPE, J., *dissenting); Grimes v King,* 311 Mich 399, 414; 18 NW2d 870 (1945); *Siverling v Lee,* 90 F Supp 659, 660 (ED Mich, 1950). Under the statute one cause of action may be pressed for all damages flowing from injuries resulting in death.

The distinction between instantaneous and noninstantaneous death was developed when death actions and survival actions were exclusive of each other as two separate causes. See the discussion in *Ford v Maney's Estate,* 251 Mich 461; 232 NW 393 (1930). When the Legislature passed 1939 PA 297, it obliterated the distinction between instantaneous death and noninstantaneous death in favor of creating one cause of action where death results from the wrongful conduct of another, either instantaneously or through injuries wrongfully inflicted. *In re Olney's Estate, supra,* p 76; *Grimes, supra,* p 414. The survival act was not repealed by

the wrongful death act, but was incorporated into the death act to form a single grant of recovery. *Olney's Estate, supra.*

The majority, following *Hawkins v Regional Medical Laboratories, PC,* 415 Mich 420, 436; 329 NW2d 729 (1982), claims that the Supreme Court has now rejected the notion that the wrongful death statute created a new cause of action and holds that consolidation of death and survival actions in the wrongful death statute did not alter the basic nature of the causes of action. This overly technical view misses the point. The Legislature has combined the separate causes of action for death and survival and eliminated the confusion that resulted from the artificial distinction between instantaneous and noninstantaneous death. The act created one cause of action for injuries resulting in death. *Hawkins, supra,* pp 432-433, cited with approval Chief Justice NORTH's majority opinion in *In re Olney's Estate,* that found the prior survival act was not "at all inconsistent with any provision in the 1939 act, except that section 1 in the latter act provides: 'All actions for such death, or injuries resulting in death, shall hereafter be brought under this act' ".

I do not think that *Hawkins* mandates the majority's holding. *Hawkins* found "the interpretation given to the post-1939 death act and its relationship to the saving provision of MCL 600.5852; MSA 27A.5852, as announced by the federal circuit court in *Janes v Sackman Bros Co,* 177 F2d 928 (CA 2, 1949) to be correct". *Hawkins, supra,* p 439. I believe that this evinces an adoption of the entire *Janes* rationale and not merely part of it, as the lead opinion contends. *Janes* analyzed the relationship between Michigan's wrongful death act and the savings provision as follows:

"Since the present action is set up as a survival action under the combined remedy now granted by § 27.711, the three-year period of § 27.605 obviously applies, but is extended a maximum of three years by the provisions giving time for the appointment of an administrator in § 27.610. *Cf. Szydelko v Smith's Estate,* 259 Mich 519; 244 NW 148 (1932). And plaintiff by his allegations has certainly brought his case within the limits which the combination of these two limitation statutes imposes. *But even if it should develop at the trial that death was, in fact, instantaneous, and that the action is grounded in the features of § 27.711 which continue the former Death Act, we think the preferable view to be that, nevertheless, the action is not barred.* Of course that would be clear were the analogies from other states suggesting the applicability of the general six-year statute to be held controlling. *But the clear-cut rule as to the survival cases, the background of apparent judicial reaction that § 27.610 does apply broadly in death cases, and the legislative attempt to blot out the troublesome distinctions between these former diverse rights lead us to believe that the Michigan court will hold this exception to the limitation statute also applicable to this branch of the now combined death claim."* (Emphasis added.) 177 F2d 932.

I think that *Hawkins* approved of the *Janes* interpretation of the relationship between the wrongful death act and the savings provision of MCL 600.5852; MSA 27A.5852.

I disagree with *Ortiz v Ferris,* 128 Mich App 776; 341 NW2d 215 (1983), to the extent that it revived the distinction between instantaneous and noninstantaneous death. *Ortiz* fosters an inconsistency between survival and death-type actions in wrongful death actions by applying the savings provision to survival-type actions only, despite the legislative intent to combine these two causes of action into one cause of action for recovery of damages where tortious conduct causes death. Consistent with *Janes* and *Hawkins,* I would apply the savings provisions of MCL 600.5852; MSA 27A.5852 to plaintiff's wrongful death action.