CRAWFORD v OSTROWSKI

Docket No. 82839. Submitted January 16, 1986, at Detroit. Decided March 7, 1986.

Costello Crawford was admitted into Mount Carmel Mercy Hospital because of upper limb weakness. Dr. Arthur Ostrowski performed a bilateral carotid arteriogram on Crawford, who thereafter experienced difficulty in breathing and then a fatal heart attack. Plaintiff, Ernestine Crawford, as personal representative of the estate of her husband, Costello Crawford, filed a medical malpractice suit in Wayne Circuit Court against Dr. Ostrowski and the hospital. An accelerated judgment was entered in favor of Dr. Ostrowski after plaintiff failed to timely serve the complaint on Dr. Ostrowski. Dr. Ostrowski had died and Doris B. Ostrowski was appointed personal representative of his estate before plaintiff filed suit. Plaintiff filed a new medical malpractice suit against defendant, Doris B. Ostrowski, in her capacity as personal representative of the estate of Dr. Ostrowski. Plaintiff alleged that as a result of Dr. Ostrowski's negligence during the arteriogram, Costello Crawford became agitated resulting in the carotid needles becoming dislodged and that the dislodged needles punctured his respiratory system, causing respiratory failure, cardiac arrest and, ultimately, death. Defendant moved for accelerated judgment contending that the period of limitations had expired before plaintiff filed suit. Plaintiff responded and argued that, because Crawford's death was noninstantaneous, the saving provision of the statute of limitations applied, making her suit timely. After two hearings, the circuit court, John H. Hausner, J., granted defendant's motion, ruling that Crawford's death was instantaneous. Plaintiff appealed. *Held:*

1. Costello Crawford's death was instantaneous for purposes

REFERENCES

Am Jur 2d, Limitation of Actions §§ 222, 229, 230, 246, 261.

Am Jur 2d, Pleadings §§ 306-338.

Claims for expenses of last sickness or for funeral expenses as within contemplation of statute requiring presentation of claims against decedent's estate, or limiting time for bringing action thereon. 17 ALR4th 530.

See also the annotations in the ALR3d/4th Quick Index under Death.

of the application of the statute of limitations. The alleged malpractice argued to be the active cause of death continued to operate directly upon Crawford and he did not survive any appreciable length of time. His death would have been in fact instantaneous, but for the efforts to revive him which were undertaken for some 45 minutes.

2. Plaintiff was not bound by a statement in her complaint that death was immediate. A statement of fact set forth in a pleading is treated as an admission by the pleader under GCR 1963, 604. However under GCR 1963, 118.1, a party may amend his pleading as a matter of course, or with the consent of the opposing party, or by leave of the trial court, which shall freely grant such leave when justice so requires.

Affirmed.

1. LIMITATION OF ACTIONS — WRONGFUL DEATH — SURVIVAL OF ACTIONS — MEDICAL MALPRACTICE.

   The personal representative of a deceased has two years from the date of his decedent's death to file a malpractice action alleging wrongful death where the decedent's death was instantaneous, i.e., occurred simultaneously with the alleged wrongful act; if death was noninstantaneous, i.e., occurred after the wrongful act, the personal representative has two years from the date of the issuance of letters testamentary to bring suit, provided that in no case may suit be commenced more than three years after the expiration of the malpractice period of limitations (MCL 600.5805[4], 600.5852; MSA 27A.5805[4], 27A.5852).

2. PLEADING — ADMISSIONS — AMENDMENT OF PLEADINGS — COURT RULES.

   A statement of fact set forth in a pleading is treated as an admission by the pleader and need not be proved by the opposite party; however a party may amend his pleading once as a matter of course within the time specified by the court rule, or by written consent of the adverse party, or by leave of court, which shall be freely given when justice so requires (1963 GCR 118.1, 604; MCR 2.118[a]).

*Gittelman, Paskel, Tashman & Blumberg, P.C.* (by *Burt E. Salinger),* for plaintiff.

*Schureman, Frakes, Glass & Wulfmeier* (by *Cheryl L. Chandler),* for defendant.

Before: D. F. WALSH, P.J., and CYNAR and N. J. KAUFMAN,* JJ.

PER CURIAM. On May 22, 1984, plaintiff, Ernestine Crawford, as personal representative of the estate of Costello Crawford, deceased, filed a medical malpractice suit against Doris B. Ostrowski, the personal representative of the estate of Arthur Ostrowski, M.D., deceased. On July 9, 1984, defendant filed a motion for accelerated judgment arguing for dismissal on the basis that plaintiff's claims were barred by the applicable statute of limitations. At the hearing on January 4, 1985, Wayne Circuit Court Judge John H. Hausner granted accelerated judgment in favor of defendant. An order dismissing plaintiff's complaint with prejudice and entering judgment in favor of defendant was entered on January 10, 1985.

As background, it should be noted that prior to the May 22, 1984, complaint, plaintiff had filed suit on May 26, 1983, against Arthur Ostrowski, M.D., and Mount Carmel Mercy Hospital. Because plaintiff failed to serve Dr. Ostrowski within 180 days, defendant's previous motion for accelerated judgment was granted. Apparently, in the interim between the alleged act of malpractice and the first suit, Dr. Ostrowski died. As a result, plaintiff filed the second suit against Doris B. Ostrowski, as personal representative of Dr. Ostrowski's estate.

In her complaint, plaintiff alleged that the decedent, Costello Crawford, was admitted into Mount Carmel Mercy Hospital on January 4, 1982, because of upper limb weakness. On January 8, 1982, a bilateral carotid arteriogram was performed. Plaintiff claims that as a result of Dr. Ostrowski's negligence during the arteriogram, the decedent

---

* Former Court of Appeals Judge, sitting on the Court of Appeals by assignment.

became agitated resulting in the carotid needles becoming dislodged. The dislodged needles punctured the respiratory system, causing respiratory failure, cardiac arrest and, ultimately, death.

The trial court conducted two hearings on defendant's July 9, 1984, motion for accelerated judgment. At the first, held on July 27, 1984, plaintiff conceded that the period of limitations had run, but argued that the saving provision of MCL 600.5852; MSA 17A.5852 applied because plaintiff's decedent's death was not instantaneous. Defendant argued that death was instantaneous. The trial judge indicated agreement with defendant's position, but granted an adjournment so that plaintiff could depose those who were present during the arteriogram and subsequent resuscitative measures and, thus, develop the record on the question whether Costello died instantaneously.

Upon being deposed on November 29, 1984, Vernon J. Rougeau testified that he is an x-ray technician employed at Mount Carmel Mercy Hospital. On January 8, 1982, he was present during the performance of the bilateral carotid arteriogram performed by Dr. Ostrowski on Costello Crawford. This procedure required the insertion of needles into Costello's neck arteries. X-ray films were then taken. Rougeau testified that the patient was agitated but Rougeau was not aware of any time when the needles became dislodged. After the procedure was finished and the needles had been removed, plaintiff's decedent had trouble breathing and then stopped breathing. The doctor at this time was applying pressure to the patient's neck, which is the next step in the procedure after the needles are removed. The code call was put in. Rougeau did not assist in the resuscitation measures. The code call was not successful.

According to the December 5, 1984, deposition

testimony of Edward A. Clay, M.D., he was a resident at Mount Carmel Mercy Hospital on January 8, 1982. He was part of the code-call team that worked on Costello Crawford. The decedent was in the radiology department. The procedure being performed at that time was an "angiography." When Clay first arrived at the scene, the patient had a faint pulse. Also, Clay didn't believe the patient was breathing when Clay first arrived. The patient expired while Clay was in the room. The resuscitation efforts failed to reverse the patient's condition.

On January 4, 1985, the hearing on defendant's motion for accelerated judgment reconvened. At the hearing, plaintiff argued that the decedent's death was noninstantaneous because the decedent survived an appreciable length of time and because the active cause of death, the carotid arteriogram, did not operate on him (continue) until death. Defendant argued that the decedent's death was instantaneous to the alleged acts of malpractice and, therefore, the savings provision was inapplicable. The trial court granted the defendant's motion, holding that as a matter of law the cause of death was direct and continuing and the death was instantaneous.

The issue for our consideration is whether the trial court erred in determining that Crawford's death was instantaneous.

The instant suit arose out of the alleged medical malpractice of defendant's decedent, which resulted in the death of plaintiff's decedent. Plaintiff's decedent, Crawford, was subjected to a bilateral carotid arteriogram by defendant's decedent, Dr. Ostrowski. According to Ostrowski's notes, Crawford became agitated during the procedure and the needles placed in his neck arteries became dislodged. A hematoma developed in his neck

which caused respiratory embarrassment. Cardiac arrest resulted and a code blue call was made. Forty-five minutes later, Crawford was pronounced dead. The date was January 8, 1982.

Some time later, although the date is not specified in the complaint, plaintiff was granted letters of authority as Crawford's personal representative. On March 6, 1983, Ostrowski died. On March 24, 1983, letters of authority were granted to his personal representative, Doris Ostrowski. Less than two years later, on May 22, 1984, plaintiff filed a suit. The filing came more than two years after January 8, 1982, however, and, thus, defendant moved for accelerated judgment of dismissal. In response, plaintiff agreed that the medical malpractice statute of limitations should apply and that the period should begin to run on January 8, 1982. See MCL 500.5805(4); MSA 27A.5805(4).

The instant dispute, however, centers on the question whether the saving provision contained in MCL 500.5852; MSA 27A.5852 operates to toll the statute until at least the date the complaint was filed on May 22, 1984. Plaintiff contends that the saving provision applies because the patient's death was noninstantaneous, while defendant contends that the provision does not apply because the decedent's death was instantaneous.

MCL 600.5852; MSA 27A.5852 provides in pertinent part:

> If a person dies before the period of limitations has run or within 30 days after the period of limitations has run, an action which survives by law may be commenced by or against the executor or administrator of the deceased person or the claim may be proved as a debt against the estate of the deceased person, as the case may be, at any time within 2 years after letters testamentary or

letters of administration are granted, although the period of limitations has run.

\* \* \*

But no executor or administrator shall bring an action under this provision unless he commences it within 3 years after the period of limitations has run.

As stated in *Ortiz v Ferris,* 128 Mich App 776, 781; 341 NW2d 215 (1983):

[T]he tolling provisions of § 5852 [MCL 600.5852] do not extend the two-year period of limitations [MCL 600.5805(4); MSA 27A.5805(4)] where death is "instantaneous."

See also *Hawkins v Regional Medical Laboratories, PC,* 415 Mich 420; 329 NW2d 729 (1982).

In the instant case, the nature of the death of plaintiff's decedent ("instantaneous" as opposed to "noninstantaneous") is the key to the determination of whether MCL 600.5852 applied here to toll the statute of limitations. Where death is noninstantaneous, MCL 600.5852 applies to extend the time in which suit can be brought by the personal representative of the decedent. *Hawkins, supra.*

As noted by the *Hawkins* Court the distinction between instantaneous and noninstantaneous death under the former wrongful death and survival acts spawned numerous suits. In *West v Detroit United Railways,* 159 Mich 269; 123 NW 1101 (1909), the decedent was killed when he was struck and carried underneath a streetcar. He had been heard by two bystanders to groan for approximately 15 minutes after the accident. The Court held that death is instantaneous "[w]here there is a continuing injury, resulting in death within a few moments . . . ." *Id.,* p 271.

In *Crook v Eckhart,* 281 Mich 703; 275 NW 739

(1937), the Court held it proper for the jury to determine whether the death was instantaneous or not because there was evidence that the decedent was breathing after an automobile accident despite the coroner's testimony that in his opinion the death was instantaneous. The Court quoted with approval the following jury charge:

> "Where there is a continuing injury, resulting in death within a few moments, it is instantaneous within the meaning of this statute. The recognized test in this State distinguishing between the two causes of action, survival and instantaneous death, is whether the active cause of death continued to operate directly upon the injured person until life was extinct, and it follows, from this definition, that if the deceased survived any appreciable length of time, even though in an unconscious condition, that the plaintiff cannot recover in this action, because death would not be instantaneous under the definition as laid down by the Supreme Court." [*Id.*, pp 714-715.]

In *Barbon v Gladwin Light & Power Co,* 201 Mich 697; 167 NW 1024 (1918), the Court held that a man killed by electrocution was killed instantaneously and stated:

> The man was killed by a current of electricity received when he leaned against or touched the metal wall, and whether one or more minutes elapsed before life was extinct is not material. A verdict based upon another conclusion would have properly been set aside by the court. [*Id.*, p 709.]

In *Beach v City of St Joseph,* 192 Mich 296, 303; 158 NW 1045 (1916), the Court held that death was instantaneous even though cries were heard for a short time from a drowning victim after the accident which threw her into the water.

On the other side of the coin is *Nelson v Glover,* 231 Mich 229; 203 NW 840 (1925), where death was held to be noninstantaneous. The decedent survived for twenty minutes after an auto accident, although he was unconscious. Death was caused by internal bleeding. The Court held:

> Death was therefore not instantaneous, but followed the injuries received, and was occasioned by a cause brought into operation by the accident. This being true, life survived the accident until death from internal bleeding supervened. [*Id.,* p 231.]

In *Olivier v Houghton County Street-Railway Co,* 134 Mich 367; 96 NW 434 (1903), the decedent was injured when the wagon in which he was riding collided with a street car. He survived until the following day. The Court held that the action survived and stated:

> We see no reason for splitting hairs as to what is meant by instantaneous death, though we can appreciate the difference between a continuing injury resulting in drowning, or death by hanging, throwing from a housetop, etc., and one where a person survives the wrongful act in an injured condition. There is no occasion for saying that one dies instantly because such survival is accompanied by a comatose condition, or unconsciousness, or insanity, or idiocy. The law draws no such distinction between the normal and abnormal, or the rational and irrational. Either has a right of action. [*Id.,* p 368.]

In *Janse v Haywood,* 270 Mich 632; 259 NW 347 (1935), the Court held that the issue was properly submitted to the jury where the decedent exhibited signs of life immediately after an automobile accident. The testimony indicated that blood

spurted from the victim's mouth and that her pulse was beating for several minutes. *Id.,* p 635.

After reviewing the distinctions in the law, it is our opinion that the death of Costello Crawford was instantaneous. Plaintiff goes to considerable effort to show that the decedent was "alive" at the moment of malpractice but "died" forty-five minutes later, after the code-blue procedures were attempted and were not successful.

We believe that such an argument is an attempt to "split hairs." Medical procedures have substantially improved and advanced since the cases under the old survival and death acts were decided. Such procedures as the emergency code-blue procedure as followed in this case are required and routinely applied in hospitals. But for such a procedure, the plaintiff's decedent's death would have been factually instantaneous. There is no reason to allow the code-blue procedure to change that fact. The active cause of death continued to operate directly upon Crawford and he did not survive any appreciable length of time. The doctors worked on him continually throughout the forty-five minutes in an effort to revive him. He could not be revived. His death, in our opinion, was instantaneous for purposes of application of the statute of limitations.

Finally, plaintiff argues that she should not be bound by the admissions in her complaint that the decedent's death was "immediate." Defendant argued at the hearing that under GCR 1963, 604 (deleted in MCR), plaintiff's statement in her complaint that the decedent's death was immediate is an admission. GCR 1963, 604 provides:

> Any statement of fact set forth in any pleading shall be treated as an admission by the pleader and need not be proved by the opposite party.

However, the court rules allow a party the right to amend his pleadings once before or within fifteen days after a responsive pleading is filed. After this time an amendment can be made by leave of court and leave should be freely given when justice so requires. Specifically, GCR 1963, 118.1, now MCR 2.118(A), provides, in pertinent part, as follows:

> A party may amend his pleading once as a matter of course at any time before or within 15 days after a responsive pleading is served or, if the pleading is required and the action has not been placed upon the trial calendar, he may amend it at any time before or within 15 days after it is served. Otherwise, a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave shall be freely given when justice so requires.

We do not believe that the plaintiff was bound by any "alleged" admission.

The trial court did not abuse its discretion in granting defendant's motion for accelerated judgment. Because the death of plaintiff's decedent was instantaneous, the saving provision in MCL 600.5852 did not apply here to extend the time in which plaintiff could have filed her complaint.

Affirmed.