## HARDY v MAXHEIMER

## JOHNSON v MAXHEIMER

Docket Nos. 78250-78253. Argued April 7, 1987 (Calendar No. 6).
Decided December 7, 1987. Rehearing denied *post,* 1216.

Suzie Hardy, as personal representative of the estate of Derick
Holland, deceased, and Betty J. Johnson, as personal represen-
tative of the estate of Curtis Mathews, deceased, brought sepa-
rate wrongful death actions in the Genesee Circuit Court
against Ronald Maxheimer, individually, and doing business as
the Flint Canoe Livery, and Genesee County, alleging negli-
gence in the rental of a canoe which capsized, resulting in the
drowning of the decedents. The actions were brought almost
four years after the deaths occurred and three months after the
plaintiffs were appointed personal representatives of the dece-
dents' estates. The court, Harry B. McAra, J., denied acceler-
ated judgment for the defendants, finding that the saving
clause of MCL 600.5852; MSA 27A.5852 applies to all wrongful
death actions, tolling the statute of limitations and extending
the time in which the plaintiffs' claims could be filed. The
Court of Appeals, M. J. KELLY, P.J., and ALLEN, J. (SHUSTER, J.,
dissenting), reversed, holding that the saving provision applies
only to survival actions and that the determination whether an
action survived by law is to be made by distinguishing between
instantaneous and noninstantaneous death (Docket Nos. 77350,
77351, 78328, 78329). The plaintiffs appeal.

In an opinion by Justice ARCHER, joined by Justices BRICK-
LEY, CAVANAGH, BOYLE, and GRIFFIN, the Supreme Court *held:*

The saving provision of MCL 600.5852; MSA 27A.5852 oper-

### REFERENCES

Am Jur 2d, Death §§ 35 *et seq.*

Am Jur 2d, Limitation of Actions §§ 194-196.

Tolling or interruption of running of statute of limitations pending
appointment of executor or administrator for tortfeasor in per-
sonal injury or death action. 47 ALR3d 179.

Running of statute of limitations as affected by doctrine of relation
back of appointment of administrator. 3 ALR3d 1234.

Time from which statute of limitations begins to run against cause
of action for wrongful death. 97 ALR2d 1151.

ates to toll the statute of limitations in survival-type actions brought under MCL 600.2922; MSA 27A.2922, the wrongful death statute, without regard to whether the death of the victim was instantaneous.

1. Prior to the passage of the wrongful death act, permitting a single cause of action to be brought for injuries resulting in death, Michigan maintained two separate and distinct causes of action where a death was involved: survival actions and wrongful death actions. Each action was governed by a separate statute and provided separate remedies. Under the current survival act, MCL 600.2921; MSA 27A.2921, all actions and claims survive death and are to be prosecuted pursuant to the wrongful death act. Under the wrongful death statute, no distinction is made between deaths which occur instantaneously and those that do not; the intent of the Legislature in creating one unified cause of action for wrongful death was to end the predicament created by the need to distinguish between instantaneous and noninstantaneous death. If such a distinction were allowed to continue via the saving provision, the Legislature's purpose in creating a single action for wrongful death would be defeated.

2. A cause of action accrues under the wrongful death act at the time of infliction of the fatal injury, rather than the time of death. Even where the death is immediate, the act and injury causing death still must logically precede the death itself, and thus the action accrues prior to and survives death. The right to recovery for wrongful death survives by law. Accordingly, the saving provision applies equally to cases brought under the act, regardless of the form of the proceeding.

3. In this case, the plaintiffs may pursue their wrongful death action to judgment because the personal representatives brought the action within two years of their appointment and within three years after the initial period of limitation had run.

Reversed.

Chief Justice RILEY, joined by Justice LEVIN, dissenting, stated that a cause of action under the wrongful death act accrues at death; it does not survive death, but arises because of it. Actions which survive by law are those which are not extinguished by a decedent's death. Logically, an action must be in existence before death in order that it not be extinguished by the death. Thus, the proper analysis must focus on the nature and characteristics of an action and the time at which it came into existence. A wrongful death action is not the same action as one for the underlying wrongful conduct, permitting recovery of additional damages for the death. An action for the

underlying conduct abates at death, at which time a new cause for wrongful death arises in the personal representative of the decedent.

MCL 600.2921; MSA 27A.2921 does not prescribe application of the saving provision. Rather, it supports the proposition that a wrongful death action arises at death. Where an injury results in death, an action must be brought pursuant to the wrongful death statute. If an action for the underlying injury was brought prior to the death, the complaint must be amended to conform to the wrongful death statute. Death changes the nature of the action. It may no longer be pursued as a common-law tort action, but must conform to the requirements of the death statute.

149 Mich App 236; 385 NW2d 762 (1986) reversed.

LIMITATION OF ACTIONS — WRONGFUL DEATH — TOLLING.

The saving provision of MCL 600.5852; MSA 27A.5852 operates to toll the statute of limitations in survival-type actions brought under MCL 600.2922; MSA 27A.2922, the wrongful death statute, without regard to whether the death of the victim was instantaneous.

*Dean, Dean, Segar, Hart & Shulman, P.C.* (by *Leonard B. Shulman*), for the plaintiffs.

*Kaufman & Payton* (by *Donald L. Payton* and *Jo Robin Davis*) for defendant Maxheimer.

*Wilson, Portnoy, Leader, Pidgeon & Roth, P.C.* (by *Robert P. Roth*), for defendant Genesee County.

ARCHER, J. We granted plaintiffs leave to appeal primarily to determine (1) whether MCL 600.5852; MSA 27A.5852[1] applies to wrongful death cases in

_____

[1] If a person dies before the period of limitations has run or within 30 days after the period of limitations has run, *an action which survives by law may be commenced* by or against the executor or administrator of the deceased person . . . *at any time within 2 years after letters testamentary or letters of administration are granted* . . . . But no executor or administrator shall bring an action under this provision unless he commences it within 3 years after the period of limitations has run.

which death was "instantaneous," and (2) whether death by drowning is instantaneous as a matter of law.

We hold that the saving provision contained in MCL 600.5852; MSA 27A.5852 operates to toll the statute of limitations in both survival-type actions and death-type actions brought under MCL 600.2922; MSA 27A.2922, the wrongful death statute.[2] Thus, the plaintiffs in the instant case may pursue their wrongful death action to judgment because the personal representatives brought the action within two years of their appointment and within three years after the initial period of limitation had run.

### FACTS

On September 2, 1979, two young boys, Derick Holland and Curtis Mathews, drowned when the canoe they and another companion had rented capsized. The canoe was rented from the Flint Canoe Livery, on Mott Lake in Genesee County. The livery was run by defendant Maxheimer, and

[2] MCL 600.2922; MSA 27A.2922 provides:

(1) Whenever the death of a person or injuries resulting in death shall be caused by wrongful act, neglect, or fault of another, and the act, neglect, or fault is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, the person who or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death was caused under circumstances that constitute a felony.

(2) Every action under this section shall be brought by, and in the name of, the personal representative of the estate of the deceased person. Within 30 days of the commencement of an action, the personal representative shall serve a copy of the complaint and notice as prescribed in subsection (4) upon the person or persons who may be entitled to damages under subsection (3) in the manner and method provided in the rules applicable to probate court proceedings.

codefendant Genesee County had contracted with Maxheimer to allow him to operate the livery on the county-owned lake.

On May 4, 1983, plaintiffs were appointed as the personal representatives of the estates of decedents Holland and Mathews. Subsequently, on August 5, 1983, plaintiffs brought separate actions in Genesee Circuit Court[3] against Maxheimer[4] and Genesee County.[5] The defendants responded with motions for accelerated judgment, claiming that the suits were barred by the three-year period of limitation for negligence actions, MCL 600.5805(8); MSA 27A.5805(8).[6] Plaintiffs argued that the saving clause of MCL 600.5852; MSA 27A.5852 applied to all wrongful death actions and tolled the statute of limitations, thus extending the time in which their cause of action properly could be filed. The trial court denied the defendants' motions, and certified the denial for appeal.

On appeal, a divided Court of Appeals reversed the decision of the trial court. 149 Mich App 236; 385 NW2d 762 (1986). The majority held that (1)

[3] The two cases were eventually consolidated.

[4] The claims against defendant Maxheimer included inadequate supervision of rentals, inadequate safety equipment, inadequate instruction on use of canoes and safety devices, and renting canoes to children in dangerous weather conditions who were too young.

[5] The allegations against Genesee County were negligence in failing to promote adequate safety standards regarding the canoe rental operation and failure to enforce such standards.

[6] MCL 600.5805; MSA 27A.5805 provides:

(1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.

* * *

(8) The period of limitations is 3 years after the time of the death or injury for all other actions to recover damages for the death of a person, or for injury to a person or property.

application of the saving provision found in MCL 600.5852; MSA 27A.5852 is limited to survival actions, and (2) the determination of whether an action "survive[d] by law" for purposes of applying the saving provision is to be made by distinguishing between instantaneous death (i.e., a death action) and noninstantaneous death (i.e., a survival action). Judge Shuster disagreed, stating that he would apply the saving provision to survival-type actions as well as to death-type actions brought under the wrongful death statute.

I

It is undisputed that the decedents died as a result of the drowning on September 2, 1979. Their personal representatives were appointed on May 4, 1983. Actions brought pursuant to the wrongful death statute accrue as provided by the statutory provisions governing the underlying liability theory. *Hawkins v Regional Med Labs,* 415 Mich 420, 437; 329 NW2d 729 (1982). In this case, since the action is based on ordinary negligence, the claim accrued on September 2, 1979, the date of the injury. See *Rhule v Armstrong,* 384 Mich 709; 187 NW2d 223 (1971). Pursuant to MCL 600.5805(8); MSA 27A.5805(8), the applicable statute of limitations is three years.[7] Absent a saving or tolling provision, the action would be untimely if brought any time after September 2, 1982. The instant actions were not filed until August 5, 1983.

Plaintiffs contend the language of MCL 600.5852; MSA 27A.5852 extends the statute of limitations and therefore the claims are saved. MCL 600.5852; MSA 27A.5852 reads in pertinent part:

---

[7] See n 6.

If a person dies before the period of limitations
has run or within 30 days after the period of
limitations has run, *an action which survives by
law may be commenced* by or against the executor
or administrator of the deceased person . . . *at
any time within 2 years after letters testamentary
or letters of administration are granted* . . . . But
no executor or administrator shall bring an action
under this provision unless he commences it
within 3 years after the period of limitations has
run. [Emphasis added.]

The defendants, on the other hand, contend that
the § 5852 saving provision applies only to "nonin-
stantaneous" death cases "which survive[d] by
law." Therefore, according to the defendants, the
critical issues are whether plaintiffs' decedents had
an actionable claim prior to the time of their
death, and whether their deaths were "noninstan-
taneous." The Court of Appeals took the defen-
dant's view that application of the § 5852 saving
provision is limited to survival (i.e., noninstantane-
ous death) actions and that this case was not a
survival action because the plaintiffs' decedents'
deaths were "instantaneous."[8]

In the instant case, the Court of Appeals focused
upon the language in the § 5852 saving provision:
"action which survives by law." 149 Mich App
242.[9] Under the Court of Appeals interpretation,
an action for wrongful death is created at the time
of death, and cannot be said to "survive" death.
Therefore, according to the Court of Appeals, only
actions which might have been brought as "sur-
vival" actions fall within the § 5852 saving provi-
sion. *Id.* The Court of Appeals further maintained
that for purposes of the § 5852 saving provision, a

[8] There was no opportunity to revive or resuscitate the plaintiffs'
decedents.

[9] See also *Ortiz v Ferris,* 128 Mich App 776, 780; 341 NW2d 215
(1983).

"survival" action is one in which the plaintiffs' decedents sustained "noninstantaneous" death. Thus, under the Court of Appeals construction, if the death is interpreted to be "noninstantaneous" (i.e., a survival action), a plaintiff will have the benefit of an additional time period after appointment of a personal representative to bring an action for wrongful death, whereas a plaintiff whose decedent's death was "instantaneous" (i.e., a death action) will be bound by the applicable statute of limitations no matter when a personal representative is appointed.

II

We disagree with the Court of Appeals for several reasons. We shall consider each reason separately.

A

Firstly, the Court of Appeals addressed this Court's decision in *Hawkins,* to support its position that the § 5852 saving clause did not apply under the facts of this case. In *Hawkins, supra,* we held that any time death does not instantaneously result from wrongful conduct, the claim brought by the decedent's personal representative is a survival action enhanced by the broader measure of damages in the current death act. 415 Mich 434.

Although the *Hawkins* Court did not explicitly address the question presented in this case— whether the saving provision applies to wrongful conduct resulting in instantaneous death, the Court did approve the interpretation given to the post-1939 death act and its relationship to the saving provision of MCL 600.5852; MSA 27A.5852 as announced by the federal circuit court in *Janes v Sackman Bros Co,* 177 F2d 928 (CA 2, 1949).

In *Janes,* a minor child died as a result of a cowboy suit catching fire. Sackman Brothers Company manufactured and sold the suit to a Michigan retailer from whom the suit had been purchased. The death resulting from the alleged wrongful conduct was characterized as not occurring instantaneously, although the minor child died on the same day the suit caught fire. Applying Michigan law, the court discussed the relationship of a survival action and a death action and held:

> Since the present action is set up as a survival action under the combined remedy now granted by § 27.711, the three-year period of § 27.605 obviously applies, but is extended a maximum of three years by the provisions giving time for the appointment of an administrator in § 27.610. And plaintiff by his allegations has certainly brought his case within the limits which the combination of these two limitation statutes imposes. But even if it should develop at the trial that death was, in fact, instantaneous, and that the action is grounded in the features of § 27.711 which continue the former Death Act, we think the preferable view to be that, nevertheless, the action is not barred. Of course that would be clear were the analogies from other states suggesting the applicability of the general six-year statute to be held controlling. *But the clear-cut rule as to the survival cases, the background of apparent judicial reaction that § 27.610 does apply broadly in death cases, and the legislative attempt to blot out the troublesome distinctions between these former diverse rights lead us to believe that the Michigan court will hold this exception to the limitation statute also applicable to this branch of the now combined death claim* [instantaneous death resulting from wrongful conduct]. [Citations omitted. Emphasis added. 177 F2d 932.]

*Hawkins* subsequently cited *Janes* with approval, stating:

> We find the interpretation given to the post-1939 death act and its relationship to the saving provision of MCL 600.5852; MSA 27A.5852, as announced by the federal circuit court in *Janes v Sackman Bros Co, supra,* to be correct. [415 Mich 439.]

However, the Court of Appeals in the instant case considered the language in *Janes* concerning application of the saving provision to death actions ambiguous dicta:

> We acknowledge that this language gives rise to an ambiguity regarding the extent to which the *Hawkins* Court adopted *Janes'* analysis. In *Janes,* a survival action, the court held that the saving provision did operate to extend the time in which suit could be initiated. The federal court then indicated, in dicta, that it believed the Michigan courts would apply the saving provision to death actions as well, given "the [perceived] legislative attempt to blot out the troublesome distinctions between [instantaneous and noninstantaneous death]." 177 F2d 932.
>
> When the *Hawkins* language which cited *Janes* with approval is read in the context of the entire *Hawkins* opinion, it appears that our Supreme Court did not intend a full-scale adoption of the *Janes* analysis. [149 Mich App 243-244.]

The language used in an opinion of the court must be construed in light of the facts and issues involved in a case under consideration and should not be interpreted as going beyond the scope of matters for adjudication, *Howard Pore, Inc v Comm'r of Revenue,* 322 Mich 49; 33 NW2d 657 (1948). We agree with the Court of Appeals that

*Hawkins* did not fully adopt *Janes,* and that the federal court's indication that it believed the Michigan courts would apply the saving provision to death actions as well as survival actions was dicta. 149 Mich App 244.

While federal court interpretation of a state statute has no precedential force in the state court, its interpretation is important as to the persuasiveness of its reasoning. *Continental Motors Corp v Muskegon Twp,* 365 Mich 191; 112 NW2d 429 (1961); *Rhule v Armstrong, supra.* Accordingly, the persuasiveness of the *Janes* court reasoning has led us to believe that it was correct when it interpreted the statutory provision extending the period of limitation for administrators and now personal representatives as applying to both survival actions involving noninstantaneous deaths and death actions involving instantaneous deaths, and we now expressly adopt that position. If the distinction between "instantaneous" and "noninstantaneous" death is maintained for purposes of determining the applicability of the saving provision of MCL 600.5852; MSA 27A.5852, then the Legislature's purpose in creating a single statutory action for wrongful death is undermined. The confusing distinction between "instantaneous" and "noninstantaneous" death which the Legislature intended to abolish would be perpetuated and would lead to the same plethora of bewildering cases concerning when a death is to be considered instantaneous.[10]

---

[10] For a recent look at this same confusion, see, e.g., *Ortiz v Ferris,* 128 Mich App 776; 341 NW2d 215 (1983) (where the Court was unable to determine whether death was instantaneous because it was possible that deceased lingered on several hours); *Crawford v Ostrowski,* 151 Mich App 336; 390 NW2d 661 (1986) (which held death to be instantaneous where forty-five minutes of resuscitation efforts were unsuccessful); *Warren v Howlett,* 148 Mich App 417; 383 NW2d 636 (1986) (where eleven hours was held to be "survival").

B

Secondly, the history of the wrongful death act itself exhibits the Court of Appeals misplaced reliance upon instantaneous versus noninstantaneous death. Prior to 1939, Michigan maintained two separate and distinct causes of action where a death was involved—survival actions and wrongful death actions. *Hawkins,* at 428-429. Each action was governed by a separate statute and provided separate remedies. *Id.* at 430. Then, in 1939, the Legislature passed the wrongful death act, now MCL 600.2922; MSA 27A.2922. *Id.* at 432-433. The wrongful death act permits a single cause of action to be brought for injuries resulting in death. *Id.* The statute itself makes no distinction between deaths which occur instantaneously or noninstantaneously. *Id.* at 433. And we find nothing to justify the loss of an action simply because the injury was instantaneously fatal.

Clearly, the Legislature's intention in creating one unified cause of action for wrongful death under MCL 600.2922; MSA 27A.2922 was to end the predicament created by the need to distinguish between instantaneous and noninstantaneous death. As this Court explained in *Hawkins, supra* at 430-431:

> It is clear . . . that [prior to 1939] a distinction was drawn as to whether death from a wrongful act was instantaneous, in which case the action lay under the "wrongful death" statute, or whether there was a period of survival, thus requiring that the action be maintained under the "survival act." This distinction *was* crucial since the claims were mutually exclusive and the measure of damages was substantially different. *Lincoln v Detroit & M R Co,* 179 Mich 189; 146 NW 405 (1914); *Crook v Eckhardt,* 281 Mich 703; 275 NW 739 (1937).

The strict application of this temporal distinction not only *spawned numerous suits over what "instantaneous death" meant, Olivier v Houghton County Street-Railway Co,* 134 Mich 367; 96 NW 434 (1903); *Nelson v Glover,* 231 Mich 229; 203 NW 840 (1925); *Ford v Maney's Estate,* [251 Mich 461; 232 NW 393 (1930)]; *Janse v Haywood,* 270 Mich 632; 259 NW 347 (1935); *Crook v Eckhardt, supra; In re Beiersdorfer's Estate,* 297 Mich 592; 298 NW 294 (1941), but also *created pleading problems where the "time of death" issue was close. Carbary v Detroit United Railway,* 157 Mich 683; 122 NW 367 (1909); *Anderson v Jersey Creamery Co,* 278 Mich 396; 270 NW 725 (1936); *Lucy v Dowd,* 285 Mich 530; 281 NW 314 (1938).

*Confusion* in the application of these two statutes was ended when the Legislature, by the enactment of a new wrongful death act, 1939 PA 297, combined the two acts, requiring that all actions for injuries resulting in death be brought thereunder.

Prior to *Hawkins,* the Court in *In re Olney Estate,* 309 Mich 65, 76, 82; 14 NW2d 574 (1944), had also recognized this purpose.

The amended act expressly provides that "all actions for such death or injuries resulting in death, shall hereafter be brought only under this act." An examination of the amended act in the light of the former law clearly reveals that the *legislature intended to wipe out the fiction of instantaneous death and create one cause of action where death results, either "instantaneously" or from injuries wrongfully inflicted;* and that this cause of action is a new statutory action.

* * *

[T]he obvious purpose of the 1939 act was to enable a person to bring his action under this statute *regardless of whether there was instantaneous death or survival of the injured person,* and

to provide to what person or persons the damages recovered should be "distributed."

See also *Janes v Sackman Bros Co, supra.*

If the distinction between instantaneous and noninstantaneous death were allowed to continue via the saving provision, the intent of the Legislature when it enacted the post-1939 wrongful death act would be defeated, and numerous lawsuits over what "instantaneous death" means and pleading problems in cases where a "time of death" issue is close would surely result.

C

Thirdly, defendants and the Court of Appeals rely on the fact that a cause of action for death is wholly a creature of our death statute. However, they fail to recognize that a "survival" action for "negligent injuries to the person" (as would have been the case had plaintiffs' decedents died "noninstantaneously" under the Court of Appeals construction) is also a creature of statute. The common-law and statutory development of a "survival" action for negligent injuries to persons illustrate the defendants' and the Court of Appeals error in relying upon the instance of the claimant's death in relation to the fatal injury rather than upon the Revised Judicature Act itself.

As acknowledged in *In re Olney Estate, supra,* 72:

> At common law there was no civil cause of action for the death of a human being caused by the wrongful act or negligence of another, *or for damages suffered by any person in consequence of such death. Hyatt v Adams,* 16 Mich 180 [1867]. Nor did the common law permit the survival of actions for personal injuries. *Dolson v [Lake Shore*

*& M S] Railway Co,* 128 Mich 444 [87 NW 629 (1901)].

See also *Ford v Maney's Estate,* 251 Mich 461; 232 NW 393 (1930).

By the early nineteenth century, while the Michigan Legislature codified the common law, it also provided that certain actions which were formerly extinguished by a claimant's death would now survive. *Id.* In *Hawkins, supra* at 428-429, we outlined the legislative development of the survival act.

> Early in its history, Michigan adopted a rather liberal "survival act" to preserve causes of action which, under common law, were terminated by the death either of the person injured or the tortfeasor. 1846 Rev Stats, ch 101, § 5.[11] This act was amended by 1885 PA 113 and 1897 PA 148 to include, as surviving actions, fraud, deceit and negligent injuries to persons. It was perpetuated in this form by the former Judicature Act (former 1915 CL 12383; 1929 CL 14040) and read:
>
> "In addition to the actions which survive by the common law the following shall also survive, that is to say, actions of replevin, actions for the conversion of property, for deceit, for assault and battery, for false imprisonment, *for negligent injuries to persons,* for damages done to real and personal estate, and actions to recover real estate, or any interest therein, where persons have been induced to part with the same through fraudulent representations and deceit." [Emphasis added.]

[11] The original survival act provided:

In addition to the actions which survive by the common law, the following shall also survive, that is to say: actions of replevin and trover, actions for assault and battery, or false imprisonment, or for goods taken and carried away, and actions for damage done to real or personal estate.

The survival act was continued in this form by 1857 CL 4208; 1871 CL 5828.

Pursuant to 1939 PA 297, the Legislature partially repealed the survival act and amended it to require that negligent injuries resultant in death be brought under the wrongful death act itself. In 1948, the Legislature revisited the survival act and expanded the number of causes of action which survived a claimant's death.[12] However, in 1961 PA 236,[13] the Legislature abandoned its restrictive "laundry list" approach to the survival act. The present survival act, MCL 600.2921; MSA 27A.2921, provides:

> *All actions and claims survive death. Actions on claims for injuries which result in death shall not be prosecuted after the death of the injured person except pursuant to the next section.* If an action is pending at the time of death the claims may be amended to bring it under the next section. A failure to so amend will amount to a waiver of the claim for additional damages resulting from death.

The Committee Comment accompanying the revised survival act stated the Legislature's intent as follows:

> *This section drastically changes the present law, CL (1948) 612.32.* At common law, personal rights

---

[12] The 1948 survival act, formerly MCL 612.32; MSA 27.684, was amended to provide:

> In addition to the actions which survive by the common law the following shall also survive, that is to say, actions of replevin, actions for the conversion of property, for deceit, for assault and battery, for false imprisonment, for negligent injuries to persons, for damages done to real and personal estate, and actions to recover real estate, or any interest therein, where persons have been induced to part with the same through fraudulent representations and deceit.

[13] 1961 PA 236 is the Revised Judicature Act. The Legislature's amendment of the survival act is but a small portion of the tremendous reforms the RJA enacted upon the judicial system.

of action died with the person. This seemed manifestly unfair in certain cases, so Survival Acts were written to allow certain actions to survive. *There is no good reason for allowing some actions to survive, and not others, apart from cultural inertia.* Since the actions which have not survived in the past are tort actions, it is pertinent to consider the theory of tort damages.

One purpose of damages in tort is to compensate the injured party. This purpose is defeated if the action does not survive the death of the injured party, or the death of the wrongdoer. *Damages in tort are also thought to serve an exemplary purpose, even when not denominated "punitive." This purpose is defeated if the action does not survive.*

This section is a logical advance in the legislation in this area. That it has not been made earlier may be due to the unfortunate approach of the statutes in listing those actions which do survive, and thus overlooking those which the statute failed to cover. This section has the added advantage of simplicity in application. [Emphasis added.]

The language of § 2921 is sweeping and unambiguous. "All actions and claims survive death."[14] This provision has been found to be universally applicable to *all* actions and claims which arise under the Revised Judicature Act. See *Robertson v Devereaux,* 32 Mich App 85, 91, n 7; 188 NW2d 209 (1971). Given § 2921's unqualified language, we can find no discernible basis for maintaining that an action for wrongful death (which is included within the Revised Judicature Act), whether instantaneous or not, does not "survive" by law like any other cause of action.[15]

---

[14] Proper construction of a statute is a judicial function. *Webster v Rotary Electric Steel Co,* 321 Mich 526; 33 NW2d 69 (1948). The words of a statute must be construed in light of legislative intent. *O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich 524; 273 NW2d 829 (1979).

[15] This Court in *Hawkins* citing § 2921 has already recognized that

We are further persuaded that § 2921 is in accord with the Legislature's attempt to eliminate the illusory distinctions between instantaneous and noninstantaneous wrongful death. Having established within its opening sentence that all actions survive death, the Legislature then provides that "[a]ctions on claims for injuries which result in *death* shall not be prosecuted after the death of the injured person except pursuant to the next section." Again, the language of the Legislature is clear. Section 2921 merely states that injuries which result in death must be pursued pursuant to the wrongful death act and does not restrict its application to the survival only of noninstantaneous death actions. All that this provision requires is that injury resultant in death be pursued under the wrongful death provision. There is no indication that the Legislature intended to exclude wrongful death actions merely because the claimant had the misfortune to die instantaneously.

D

Thus, a "death" action (i.e., where the death is "instantaneous") like any other cause of action under the Revised Judicature Act may be said to "survive by law" for purposes of MCL 600.5852; MSA 27A.5852.[16] The claim "survives" the dece-

noninstantaneous wrongful death actions survive by law. See *Hawkins,* 415 Mich 438.

[16] The saving clause (§ 5852) was obviously designed for a period in which there were separate causes of action for instantaneous and noninstantaneous deaths, and, as the dissent points out, to apply it to the consolidated wrongful death act leads to some anomalies. Nonetheless, the Legislature did not change, amend, or replace this act when it consolidated the previously bifurcated cause of action. By finding that the consolidated wrongful death act converts all survival actions to death actions, the dissent makes a nullity of the only statute specifically placing a limitation on actions for wrongful death. We are not willing to disregard the precedent of our own Court and the precise wording of § 2921 providing that all actions are survival

dent's death to vest in those who suffer a loss through the death—it "survives" to those who are entitled to claim damages under the wrongful death act.

Further, since this Court held that under the wrongful death act a cause of action accrues at the time of infliction of the fatal injury, rather than the time of death (*Hawkins, supra,* at 437), then even where the death is immediate, the act and injury causing death still must logically precede the death itself and thus the action accrues prior to and survives death.[17] Accordingly, the saving provision should apply equally to cases which are brought under the wrongful death act regardless of the form of the proceeding.

We, therefore, believe that since 1846 the law in Michigan has evolved to the point where it may now be held that the right to recovery for wrongful death "survives by law." Consequently, a wrongful death action will no longer be regarded as one created at the time of death, but as one that "survives by law." We believe this interpretation fosters the legislative purpose behind both our § 5852 saving provision and the current wrongful death act, MCL 600.2922; MSA 27A.2922.

We find that legislative intent requires that we void the distinction between instantaneous and noninstantaneous death for the purposes of the

actions in order to provide a more uniform statute of limitations. That is the Legislature's work.

[17] The dissent finds "that a wrongful death action is not the same action as one for the underlying wrongful conduct" and places the "emphasis on the death aspect rather than the underlying wrong which causes the death." We read the act differently. The consolidated wrongful death act provides not that the death creates the cause of action, but, to the contrary, it places the emphasis on the "wrongful act, neglect, or fault of another," if the "act, neglect, or fault is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages . . . ." The act clearly provides not that death creates a cause of action, but that death does not extinguish an otherwise valid cause of action.

saving provision set forth in MCL 600.5852; MSA 27A.5852. It is thus not necessary to pursue further the issue whether drowning is considered instantaneous as a matter of law.

CONCLUSION

We hold that the saving provision contained in MCL 600.5852; MSA 27A.5852 operates to toll the statute of limitations in survival-type actions brought under MCL 600.2922; MSA 27A.2922, the wrongful death statute. Thus, the plaintiffs in the instant case may pursue their wrongful death action to judgment because the personal representatives brought the action within two years of their appointment and within three years after the initial period of limitation had run. Accordingly, we reverse the judgment of the Court of Appeals.

BRICKLEY, CAVANAGH, BOYLE, and GRIFFIN, JJ., concurred with ARCHER, J.

RILEY, C.J. (*dissenting*). I agree with the majority that the Legislature enacted the wrongful death statute in 1939, now MCL 600.2922; MSA 27A.2922, intending to eliminate the distinction between instantaneous and noninstantaneous deaths. However, I disagree with the majority that the effect of the Legislature so doing is to extend the statute of limitations in every wrongful death action for the period provided in the tolling provision. Thus, I dissent.

While I agree with the majority that resolution of the issue in this case requires an historical examination of the wrongful death act, I shall not unduly lengthen this opinion by repeating what has already been written. Suffice to say that the

majority here, as well as the Court in *Hawkins v
Regional Med Labs,* 415 Mich 420, 428-439; 329
NW2d 729 (1982), *Rhule v Armstrong,* 384 Mich
709, 712-716; 187 NW2d 223 (1971), and the major-
ity opinion, as well as Justice SHARPE's dissent in
*In re Olney Estate,* 309 Mich 65; 14 NW2d 574
(1944), all thoroughly analyze the antecedents, and
subsequent development of the wrongful death
statute. My reading of the statute and its history
leads me to conclude that a death action accrues
at death, and thus does not survive death. For that
reason I would affirm the decision of the Court of
Appeals, but on a different basis.

I

The majority states that in Michigan a wrongful
death action may be characterized as surviving by
law because "[t]he claim 'survives' the decedent's
death to vest in those who suffer a loss through
the death—it 'survives' to those who are entitled
to claim damages under the wrongful death act."
*Ante,* pp 439–440.

In so stating, the majority distorts the technical
definition of a survival action. All actions for
wrongful death must be prosecuted under the
provisions of the wrongful death statute. MCL
600.2921; MSA 27A.2921. The claim vests only
because of, and pursuant to, the wrongful death
statute. As used in MCL 600.5852; MSA 27A.5852,
"survive by law" is a term of art, not to be used in
a colloquial sense or as a layman would. Actions
which survive by law are those which are not
extinguished by the decedent's death. Logically,
therefore, the action must be in existence before
the decedent's death in order to not be extin-
guished by the death. The proper analysis must,
therefore, focus on the nature and characteristics

of the action and the time at which it comes into existence.

I read the 1939 amendment as having been intended to create one unified action for wrongfully caused deaths, whether the deaths were instantaneous or noninstantaneous. This consolidation revised the damages recoverable under the former survival actions and death actions, resulting in a hybrid action. Further, all actions for death must be brought pursuant to the statutory provisions. The survival action was incorporated into the death statute indicating a legislative emphasis on the death aspect rather than the underlying wrong which causes the death. Thus, I conclude that a wrongful death action is not the same action as one for the underlying wrongful conduct, with additional damages recoverable for the death. I agree with Justice SHARPE's dissent in *In re Olney* where he stated:

> We conclude that the amendment to the death act excludes the cause of action for injuries which the deceased party had during his lifetime from the operation of the survival act, when the injured party dies prior to the bringing of an action; that the amendment does not join in a single cause of action two separate causes of action for injuries and death but creates an entirely new statutory cause of action applicable to all cases where death results from wrongful act, whether occurring "instantaneously" or as the result of injuries. The legislature has made not only the wrongful act, neglect or default of the wrongdoer a necessary element in the cause of action, but also the death of the injured party is a necessary fact to the right of his representative to maintain an action under this amendment. Death is a part of the substance or essence of the right.
>
> It inevitably follows that the cause of action for injuries resulting in death created by this statute

does not arise or come into being until the death occurs. The cause of action which the injured party has for his injuries now abates upon his death, at which time the new cause of action in his personal representative created by the statute arises. The legislature has given a new right of recovery in substitution for the right which the injured party had during his lifetime, the basis of which is the same wrongful act, but which does not come into being until his death. [*In re Olney,* *supra* at 77-78.][1] [Citations omitted.]

In *Rhule, supra,* this Court unanimously followed this approach in deciding that the saving provision does not apply to wrongful death actions.

The wrongful death act action is an independent action which arises solely on the date of and because of the wrongfully injured person's death. It does not "survive by law" the wrongfully injured person's death. [*Rhule, supra* at 715-716.]

See also *Coury v General Motors Corp,* 376 Mich 248; 137 NW2d 134 (1965), overruled in *Hawkins, supra* at 437.

Of course, *Hawkins* reversed *Rhule* and *Coury,* and held that wrongful death actions accrue at the time of the wrongful conduct rather than at death.

Prior to the 1939 amendment of the wrongful death act, there was little difficulty in assessing when a cause of action accrued and hence when the limitations period began to run. Under both the survival act and death act the focus was on the date of the wrongful act. In *Lincoln v Detroit & M R Co,* [179 Mich 189, 196; 146 NW 405 (1914)], this Court reasoned that as to actions under either

---

[1] While I agree with Justice SHARPE's analysis of the nature of a wrongful death action, I do not subscribe to his application of that analysis in *In re Olney, supra.*

the death act or the survival act, "[b]oth are
dependent on the injury." A cause of action
brought under the death act accrued at the date of
the wrongful act, which of course was effectively
the same as the date of death. *Lincoln, supra.*
Whenever there was survival for a period after the
wrongful act, the cause of action, if any, accrued
at the time of the wrongful act. *Ford v Maney's
Estate, supra.* There was nothing inconsistent in
the approach under either act. The focus has
always been on the date of the wrong. Therefore,
and because the 1939 amendment repealed only
the inconsistencies between the formerly mutually
exclusive causes of action, for purposes of deter-
mining the commencement of the running of the
statute of limitations the focus remains on the
date of the wrongful act, not on the date of death."
[*Hawkins, supra* at 435.]

I disagree with *Hawkins* for a number of rea-
sons. First, its holding is not supported by the
authorities cited. *Hawkins* cited *Lincoln v Detroit
& M R Co* for the proposition that "[a] cause of
action brought under the death act [prior to the
1939 amendment] accrued at the date of the
wrongful act, which of course was effectively the
same as the date of death." *Hawkins, supra* at 435.
Of course this is true, but only because in order
for an action to have been maintained under the
death act the death must have resulted instanta-
neously. However, the event which triggered the
accrual of the action was not the wrongful con-
duct, but in fact the death.

The action accrues to the surviving beneficiary
mentioned in the statute by *reason of the death of
the injured person* caused by the wrongful act of
another. It is strictly not proper to say that it is a
cause of action which survives; it is rather a new
action given by [the death statute]. [*Lincoln, supra*
at 195. Emphasis added.]

While it is true that *Lincoln* did contain language to the effect that survival actions and death actions were "[b]oth . . . dependent on the injury," *Hawkins, supra* at 435, nothing about that fact changes the conclusion that the death action accrues by reason of the death. There must necessarily be an injury in order for there to be a death.

Furthermore, *Hawkins* is contrary to the rule in most jurisdictions that a wrongful death cause of action does not accrue upon the wrongful conduct, but on the death. See *Larson v Johns-Manville Sales Corp,* 427 Mich 301, 320; 399 NW2d 1 (1986) (LEVIN, J., separate opinion). See also sources cited *id.* at 311, n 4. While this consideration alone is certainly no reason to abandon the *Hawkins* rule, it should also be noted that *Hawkins* is contrary to the general principles of accrual in this state. In *Connelly v Paul Ruddy's Co,* 388 Mich 146; 200 NW2d 70 (1972), this Court held that a cause of action accrues at the time the plaintiff may bring an action on the wrong. In *Williams v Polgar,* 391 Mich 6, 25; 215 NW2d 149 (1974), the Court cited *Connelly* for the proposition that running the statute of limitations from the day the tortious force is put into motion would "destroy plaintiff's cause of action before it even arose."

The same may also be said for the *Hawkins* accrual date. As noted by Justice SHARPE in *In re Olney, supra* at 78, "[d]eath is a part of the substance or essence of the right" to bring a wrongful death action. Where the decedent dies after the statute of limitations has run, that person will lose the right to bring a wrongful death action, before he even had the ability to do so. See also *Larson, supra* (adopting date of discovery rule of accrual in asbestosis cases because of potential for statute of limitations running before plaintiff even knew of injury).

Finally, *Hawkins* purported to overrule *Rhule* stating:

> [T]he [*Rhule*] Court incorrectly relied on the dissenting opinion of Justice SHARPE in *In re Olney's Estate, supra,* as if it were the majority, thus concluding that the 1939 amendment to the death act created a new cause of action precluding the survival of any action. [*Hawkins, supra* at 439.]

It is true that *Rhule* relied on Justice SHARPE's dissent in *In re Olney Estate* as if it were a majority opinion. However, it should be noted that *Rhule* was a unanimous opinion. Even if the Court incorrectly cited the SHARPE dissent as binding precedent, rather than persuasive authority, it was well within the Court's power to adopt Justice SHARPE's rationale, as it clearly did. Justice SHARPE and the *Rhule* Court were right.

II

The majority relies to a large degree on MCL 600.2921; MSA 27A.2921, which provides:

> All actions and claims survive death. Actions on claims for injuries which result in death shall not be prosecuted after the death of the injured person except pursuant to the next section. If an action is pending at the time of death the claims may be amended to bring it under the next section. A failure to so amend will amount to a waiver of the claim for additional damages resulting from death.

Essentially, the majority position boils down to the following syllogism: All actions and claims survive death; a death action is an action or claim; therefore a death action survives death and the saving provision is applicable.

I disagree with this analysis because it clouds the issue in this case. The Legislature's clear purpose in amending the survival statute in 1948 was to do away with the laundry list of common-law actions which survived death. Therefore, under the statute, as it now reads, all actions survive death. However, very basic to this proposition is the fact that to survive death, the action must exist before death. Therefore, the time at which a death action accrues is determinative, and is quite clearly not a question dealt with in § 2921. As such, the relevance of the statute is peripheral at best.

However, a plain reading does support the conclusion that a death action and an action for the underlying injury are different and distinct. The second sentence requires that where an injury results in death, any action must be brought pursuant to the death statute. The third sentence requires that an action brought before death be amended to conform to the death statute. The obvious implication of both these requirements is that the death changes the nature of the action. The claim may no longer be pursued as a common-law tort action, but must instead conform to the requirements of the death statute. The elements to be proved (specifically death), the named parties, and the recoverable damages are all different under the death act than they would have been had death not ensued. The key factor is whether death has in fact occurred. Thus, rather than conflict with my opinion, § 2921 supports the proposition that a wrongful death action is not the same action as one for the underlying wrongful conduct, and, therefore, the death action arises at death.

It could be argued that § 2921 prevents the potential unfairness of *Hawkins* whereby a lingering victim is barred from bringing a death action, even before death has occurred. Thus, a party who

is injured, but lingers, may bring suit for the underlying injury and, if death results, may amend the action to conform to the requirements of the death statute.

Where death occurs while the action is still in suit, no unfairness will result, as the plaintiff may then amend the complaint. However, unfairness will result if death occurs after a judgment is rendered or settlement reached. In that instance, the death will go uncompensated, as the judgment or settlement would only represent a recovery for the underlying injury.

Thus, injured parties are put in a rather dubious position. In order to preserve a death action, a plaintiff will be required to bring suit for the underlying injury. The best that the plaintiff could hope for (in terms of compensation) is to be able to string the suit along until the plaintiff does in fact die. This is hardly a desirable result as a matter of policy, as well as in terms of judicial economy.

The better result is not to require a lingering victim to initiate suit to preserve a right to death damages, but, instead, to hold that death actions accrue at death. This view is followed by the vast majority of states and is supported by statutory analysis and policy rationales. Rather than undermine this result, § 2921 actually buttresses it.

### CONCLUSION

I would overrule *Hawkins* and hold that a cause of action under the wrongful death statute accrues at death. As such, a wrongful death action does not survive death, but arises because of it. Therefore, I would hold that the saving provision does not apply, and would affirm the decision of the Court of Appeals.

LEVIN, J., concurred with RILEY, C.J.