1 F.3d 1241
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Deborah Ann KOEPNICK, Plaintiff-Appellant,
v.
AEQUITRON MEDICAL, INC., Defendant-Appellee.
 No. 92-1975.
 United States Court of Appeals, Sixth Circuit.
 Aug. 3, 1993.
 
 Before: JUDGES MILBURN, BOGGS and KRUPANSKY, CIRCUIT JUDGES.
 PER CURIAM:
 
 
 1
 Plaintiff, Deborah Ann Koepnick (Koepnick-plaintiff), personal representative of the estate of her deceased minor daughter, appealed the district court's grant of summary judgment in favor of the defendant, Aequitron Medical, Inc. (AMI-defendant), in this product liability action alleging the malfunction of an infant heart rate/respiration monitor (apnea monitor) manufactured by the defendant. Plaintiff charged that her child, Jenny Marie Koepnick, died when an apnea monitor manufactured by AMI allegedly malfunctioned by failing to sound an alarm when the child stopped breathing. The district court determined that the statute of limitations had expired on the breach of warranty and product liability claims, that plaintiff did not have an implied right of action to assert violations of the Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. section 301, et seq., and that plaintiff failed to state a claim for violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. section 1961, et seq.
 
 
 2
 Plaintiff's child was born prematurely on July 26, 1984. After spending over one month in the hospital's neonatal unit to stabilize her condition, the infant was released to her parents. Prior to discharge, the physician advised plaintiff that the baby was doing well except that she remained susceptible to apnea episodes, bradycardia, and tachycardia. Accordingly, the child's physician prescribed an AMI apnea monitor for home use. The monitor is designed and intended to sound an alarm when the monitored child stops breathing, so as to alert the parents and provide an opportunity to initiate immediate revival techniques. The monitor cannot prevent apnea or perform cardiopulmonary resuscitation. Prior to her daughter's discharge from the hospital, plaintiff was instructed in the use of the monitor and cardiopulmonary resuscitation. On September 6, 1984, an AMI apnea monitor was delivered to the Koepnick household by Foster Medical, Inc. (Foster), a medical equipment provider.
 
 
 3
 On February 11, 1985, plaintiff's child was connected to the apnea monitor and asleep in her crib next to her parents' bed. Between 3:00 a.m. and 4:00 a.m. the monitor sounded an alarm. Plaintiff rushed to the baby's crib to find the child cold, blue, and anoxic. About seven to ten minutes after the alarm sounded, the baby was in the emergency room of Reed City Hospital where her parents were informed that the baby could not be revived. An autopsy performed on February 12, 1985 disclosed that the child died of Sudden Infant Death Syndrome (SIDS).
 
 
 4
 Subsequent to the baby's demise, plaintiff contacted Foster Medical and requested that the apnea monitor be tested. On February 18, 1985, Foster contacted plaintiff and informed her that the monitor had been tested and found to be operative.
 
 
 5
 Four and one-half years later, on November 2, 1989, plaintiff saw a television news program concerning charges that AMI's apnea monitors frequently failed to sound an alarm when the monitored infant stops breathing. She concluded from the program's technical analysis that the AMI apnea monitor was susceptible to electrical interference and would detect breathing and heart beat even when those vital functions were absent or had ceased, causing a failure or delay in activation of the alarm. As a result, plaintiff requested documents from a congressional committee in Washington, D.C., which was investigating apnea monitors.
 
 
 6
 On October 31, 1991, less than two years after plaintiff viewed the television program, her attorney filed the instant action. She amended her complaint on January 21, 1992 asserting six counts against AMI: breach of express warranty of fitness for a particular purpose (Count I); breach of express warranty of fitness for intended purpose (Count II); breach of implied warranty of merchantability (Count III); product liability/negligence claim (Count IV); a violation of the FDCA (Count V); and a violation of RICO (Count VI).
 
 
 7
 AMI filed a Motion for Summary Judgment on April 15, 1992. Specifically, defendant argued that the statutes of limitations barred Counts I through IV because the period accrued from the day of the child's death. Moreover, it claimed that Counts V and VI should be dismissed for lack of subject matter jurisdiction.
 
 
 8
 Plaintiff filed a Response to Defendant's Motion for Summary Judgment on May 13, 1992, charging that the respective statute of limitations for Counts I through IV accrued from the day on which she observed the television news program or, in the alternative, arguing that the date on which she discovered or should have discovered the cause of action was a question of fact to be resolved by a jury. She further asserted that an implied right of action existed under the FDCA, and that her RICO claim was legally valid against the defendant.
 
 
 9
 On July 9, 1992, the district court filed its Memorandum Opinion and Order granting the defendant's Motion for Summary Judgment. It first concluded that the breach of warranty and product liability claims accrued on the date of the child's demise, and accordingly, those claims were time-barred, i.e., the statute of limitations expired on February 11, 1991 for the product liability claims and on February 11, 1990 for the breach of warranty claims.[1] The court determined that
 
 
 10
 where a product is the instrumentality of death the fact that the product may have been defective is manifested, and the plaintiff, as a matter of law, discovered or reasonably should have discovered the existence of the cause of action on the date of death. See, e.g., Reiterman v. Westinghouse, Inc., 106 Mich.App. 698, 308 N.W.2d 612 (Mich.App.1981); Stoneman v. Collier, 94 Mich.App. 187, 288 N.W.2d 405, 407 (1979); Sedlak v. Ford Motor Co., 64 Mich.App. 61, 235 N.W.2d 63, 64 (1975).
 
 
 11
 The district court reasoned that it was obvious at the time of the incident that the apnea monitor had failed, and therefore, the statute of limitations was triggered on the date of the child's death. The district court further concluded that plaintiff did not have an implied right of action to assert a violation of the FDCA. Moreover, it dismissed plaintiff's RICO claim because RICO does not apply in personal injury actions.
 
 
 12
 In the instant appeal, plaintiff argued that the date on which the statute of limitations began to accrue was a material issue of fact precluding summary judgment. She further asserted that the district court erred in dismissing her RICO claim.
 
 
 13
 Although the district court erred in determining that a two year statute of limitations applied to the breach of warranty claims, rather than a three year period, Huhtala v. Travelers Insurance, Co., 401 Mich. 118, 257 N.W.2d 640 (1977), the district court correctly concluded that the statute of limitations for those claims and the product liability claim had expired. Moreover, the district court properly dismissed plaintiff's RICO claim.
 
 
 14
 Accordingly, from a review of the record in its entirety, including the briefs filed herein together with the arguments of counsel, the trial court's disposition is AFFIRMED for the reasons articulated in the opinion of the district court.
 
 
 
 [1]
 The district court incorrectly determined that the statute of limitations for the breach of warranty claims was two years. However, this error does not affect the final disposition of those claims. Both breach of warranty and product liability claims have a three year statute of limitations. Huhtala v. Travelers Inc. Co., 401 Mich. 118, 257 N.W.2d 640 (1977). These time periods are extended by Michigan Comparative Laws Section 600.5852, which provides that the personal representative of the estate of the deceased person may commence an action at any time within two years after letters testamentary or letters of administration are granted, but no longer than three years after the period of limitations has run. Michigan applies this savings period to wrongful death actions, i.e., where death occurs instantaneously, as well as to survivor actions, i.e., where death occurs after the wrongful conduct. Hardy v. Maxheimer, 429 Mich.App. 422, 416 N.W.2d 299 (1987) (en banc). Accordingly, the maximum outside period in which plaintiff could assert the breach of warranty and product liability claims was a total of six years after the triggering of the statute of limitations. Therefore, the time period expired on February 11, 1991